# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-09-00370-CR

**Frank Gaytan, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2008-134, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## O P I N I O N

A jury convicted forty-five-year-old Frank Gaytan of twenty counts of aggravated sexual assault and one count of indecency with a child. *See* Tex. Penal Code Ann. §§ 21.11, 22.021 (West Supp. 2010). The jury assessed punishment at ninety-nine years' confinement on each sexual-assault count and fifteen years' confinement on the indecency count, all sentences to run consecutively. *See id*. § 3.03(b)(2)(A) (West Supp. 2010) (sentences may run consecutively when defendant is convicted of multiple offenses arising out of same criminal episode under penal code sections 21.11 and 22.021). The jury found that between August 18 and September 8, 2004, Gaytan repeatedly molested his six-year-old niece, C.R., while babysitting her. During the trial, the court allowed two adult female relatives of Gaytan's to testify that he had molested them more than twenty years earlier. Gaytan objected to the admission of their testimony, and on appeal he argues that the admission of their testimony was error requiring reversal. Gaytan argues that (1) he did not open the door to their testimony by advancing a defensive theory of fabrication; (2) the testimony's unfairly

prejudicial effect far outweighed its probative value, *see* Tex. R. Evid. 403; and (3) the testimony was not admissible to prove motive, intent, or knowledge under Texas Rule of Evidence 404(b). Gaytan also argues that the trial court erred by refusing to strike C.R.'s testimony because C.R. admitted that she could not directly recall being abused. *See* Tex. R. Evid. 602 (testimony must be based on personal knowledge). Finally, he argues that the evidence was legally insufficient to sustain a conviction on sixteen of his twenty assault counts. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The jury heard evidence that between August 18 and September 8, 2004, Gaytan babysat C.R. on several occasions. C.R.'s mother, Jennifer Robinson, worked until 6 p.m., and C.R.'s father slept during the day (he worked night shifts). C.R. would arrive home from school at approximately 4:15 p.m., and her older brother would arrive home approximately fifteen minutes later. Gaytan would look after C.R. and her older brother until Robinson got home from work.

On September 8, 2004, when Robinson arrived home from work, her son told her that C.R. was "being mean" to Gaytan. He said that C.R. had said she hated Gaytan and did not want him to babysit her any more. Robinson drove Gaytan home and then returned to her house to ask C.R. about her brother's statements. C.R. told Robinson that Gaytan had been touching her vagina and anus. Robinson called Gaytan to confront him with the accusation, and he denied it. A couple of days later, C.R. told her mother that Gaytan had also made her touch his penis through his pants. C.R. said that Gaytan had told her his penis was a "flashlight," but she knew it was actually his "wiener."

2

On September 10, 2004, Robinson took C.R. to a hospital for a medical examination. The nurse who examined C.R., Laurie Charles, testified at trial that the examination revealed no physical evidence of sexual abuse. Charles also testified, however, that during the examination C.R. repeated her allegation that Gaytan had repeatedly touched her vagina and anus.

On October 12, 2004, Janet Williams, a child-abuse investigator with the Texas Department of Family and Protective Services, conducted a forensic interview with C.R. During the interview, which was recorded, C.R. repeated her allegation against Gaytan. She also stated that Gaytan touched her every day during the period that he was babysitting her and that at the time she was in Ms. Presser's class.

On the basis of C.R.'s forensic interview, a Comal County grand jury indicted Gaytan on twenty counts of aggravated sexual assault, each count predicated on an instance in which Gaytan touched C.R.'s vagina or anus. The grand jury also indicted Gaytan on one count of indecency with a child, predicated on the "flashlight" incident. Gaytan pleaded not guilty and proceeded to trial.

During its case in chief, the State called Jennifer Robinson, who testified about her daughter's outcry and the ensuing investigation. Robinson also testified that when she called Gaytan on the day of C.R.'s outcry, he admitted that he had touched C.R. inappropriately. On cross-examination, Robinson admitted that she had never mentioned this to anyone involved in the investigation and that it was a "very major thing" to raise for the first time during trial.

The State then called C.R., who was ten years old at the time. She testified that Gaytan touched her vagina and anus many times while he was babysitting her, each time while she was sitting in his lap in the living room of her home. C.R. also testified about the "flashlight" incident. On cross-examination, C.R. admitted that she had no direct memory of Gaytan abusing her

3

and that she was basing her testimony on (1) conversations she had subsequently had with her mother and (2) parts of her recorded interview that she had recently watched. Gaytan then moved to have C.R.'s testimony stricken because it was not based on personal knowledge. *See* Tex. R. Evid. 602. The court denied his motion.

After Gaytan cross-examined C.R., the State sought to introduce testimony by four of Gaytan's adult relatives who alleged that Gaytan had touched them inappropriately when they were children. These instances of abuse allegedly occurred in 1976, 1979, 1981, and 1985. The State proposed to offer this testimony under Texas Rule of Evidence 404(b), arguing that it was probative of Gaytan's intent, motive, and knowledge with regard to his abuse of C.R. *See* Tex. R. Evid. 404(b). The State also argued that the testimony was admissible under Rule 404(b) to rebut the suggestion, allegedly made by Gaytan during his opening statement and cross-examination of C.R, that C.R. had fabricated her allegations. After hearing extensive argument from both sides, the court decided to allow testimony concerning the incidents in 1981 and 1985. The court refused to allow testimony concerning the incidents in 1976 and 1979 because Gaytan was a juvenile at the time they allegedly occurred. Gaytan requested and was granted a running bill of objection to the testimony that the court admitted.

The State then called Cherie Perez, who was Gaytan's niece and was thirty years old at the time of trial. Perez testified that from the time she was five or six years old until she was eleven, Gaytan repeatedly touched her vagina after luring her into his bedroom with candy and games. The abuse allegedly occurred at Gaytan's mother's house, where Gaytan lived. Perez also testified that Gaytan touched her in the back of a van while they were on a family trip.

4

Next, the State called Tanya Gaytan ("Tanya"), another of Gaytan's nieces, who was thirty-five years old at the time of trial. Tanya also testified that from the time she was four or five years old until she was ten, Gaytan would touch her vagina and make her touch his penis after luring her into his bedroom with candy and games. These incidents also allegedly occurred at Gaytan's mother's house.

After Tanya testified, Gaytan sought to play portions of C.R.'s recorded forensic interview that allegedly conflicted with C.R.'s trial testimony. The State sought to have the entire video played for the jury, and the trial court granted its request. Janet Williams, the child-abuse investigator who conducted the interview, testified to the circumstances surrounding the interview. On cross-examination, she confirmed that C.R. had told her she was a student in Ms. Presser's class at the time Gaytan abused her. Gaytan then introduced school records that showed C.R. was actually in Ms. Presser's class during the 2003-2004 school year, a fact that he argued was significant because the dates in the indictment were part of the 2004-2005 school year.

After closing arguments, the jury convicted Gaytan on all twenty-one counts in the indictment. Gaytan elected to have the jury assess punishment, and during the punishment phase he presented evidence that he was mildly mentally retarded with an IQ of sixty-four. The jury subsequently assessed punishment at ninety-nine years' confinement on each sexual-assault count and fifteen years' confinement on the indecency count, all sentences to run consecutively. Gaytan appeals.

## STANDARD OF REVIEW

We review trial court rulings on the admissibility of evidence for abuse of discretion. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). A trial court abuses its discretion when its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A trial court does not abuse its discretion if its decision is within "the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

When an appellant challenges the sufficiency of the evidence supporting his conviction, we examine all of the evidence adduced at trial in the light most favorable to the verdict and ask whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

## DISCUSSION

In twenty-two points of error, Gaytan argues that (1) the trial court erred by admitting Perez and Tanya's testimony; (2) the trial court erred by refusing to strike C.R.'s testimony after C.R. admitted she could not directly recall being abused; and (3) the evidence was legally insufficient to support a conviction on sixteen of the twenty assault counts. We will address these arguments in turn.

### *Perez's and Tanya's Testimony*

The trial court admitted Perez's and Tanya's testimony under Texas Rule of Evidence 404(b) ("Rule 404(b)"). The court ruled that the testimony was admissible (1) to rebut Gaytan's suggestion that C.R. was fabricating her allegations and (2) to establish motive, intent, and

6

knowledge.[1] *See* Tex. R. Evid. 404(b) (evidence of extraneous offenses admissible to prove motive, intent, and knowledge); *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (extraneous-offense evidence admissible to rebut defense of fabrication). Gaytan argues that he did not advance a theory of fabrication and that his motive, intent, and knowledge were not at issue. He also argues that even if he did advance a theory of fabrication and his motive, intent, and knowledge were at issue, the trial court still should have excluded Perez's and Tanya's testimony under Texas Rule of Evidence 403 because the testimony's probative value was greatly outweighed by its unfairly prejudicial impact. *See* Tex. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."). We will examine Gaytan's arguments in turn.

### *Whether Gaytan Advanced a Defensive Theory of Fabrication*

Gaytan acknowledges that extraneous-offense evidence is admissible under Rule 404(b) to rebut a defensive theory of fabrication, *see Bass*, 270 S.W.3d at 563, but he argues that he did not advance such a theory during trial. The State contends, as it did at trial, that Gaytan advanced a theory of fabrication during his opening statement and while cross-examining C.R., thereby opening the door to rebuttal testimony from Perez and Tanya.[2]

---

[1] The court seemed to believe that only the rebuttal theory was applicable, but it instructed the jury that it could also consider Perez's and Tanya's testimony in evaluating Gaytan's motive, intent, and knowledge. For purposes of our review, it does not matter which theories of admissibility the trial court believed were applicable. *See Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010) (we uphold trial court's evidentiary ruling if it was proper under any applicable legal theory).

[2] On appeal, the State also argues that Gaytan advanced a fabrication theory during closing argument. This fact strikes us as irrelevant to the question of whether Gaytan opened the door to extraneous-offense evidence, as obviously the trial court had already decided to admit such evidence before closing argument.

We will first address whether Gaytan advanced a fabrication theory while cross-examining C.R. During the cross-examination, Gaytan's attorney asked C.R. several questions about her allegations. C.R. admitted that she had no direct memories of being abused by Gaytan, and defense counsel asked her about the basis of her testimony. She answered that she had reviewed her videotaped interview and had several conversations with her mother. Defense counsel did not ask C.R. whether she had fabricated her allegations or why she had made an outcry.

We hold that this cross-examination did not advance a fabrication theory entitling the state to offer extraneous-offense evidence in rebuttal. "[T]he responses elicited from the State's witnesses on cross-examination . . . must be sufficient to construct a defensive theory before the State may introduce extraneous-offense evidence in rebuttal." *Bargas v. State*, 252 S.W.3d 876, 890 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Walker v. State*, 588 S.W.2d 920, 922-23 (Tex. Crim. App. 1979)). Merely challenging the complainant's credibility on cross-examination does not automatically open the door to rebuttal evidence. *Id.*; *see also DeLeon v. State*, 77 S.W.3d 300, 314 (Tex. App.—Austin 2001, pet. ref'd) (citing *Caldwell v. State*, 477 S.W.2d 877, 879 (Tex. Crim. App. 1979)). Gaytan's attorney challenged C.R.'s credibility but did not elicit responses from her that were sufficient to construct a defensive theory of fabrication. We turn, then, to consider whether his opening statement raised a theory of fabrication.

During his opening, Gaytan's attorney stated:

> The defense in this case is real simple: this didn't happen . . . . What the evidence is going to show is that [C.R.] got mad at Frank because he wouldn't play with her anymore [sic]. She made this statement [alleging abuse] and there's no evidence to support it . . . the story changes and grows and cracks and there's no physical evidence.

8

We hold that this statement was sufficient to raise a theory of fabrication that entitled the State to offer extraneous-offense evidence in rebuttal. The leading case on point is *Bass*, 270 S.W.3d 557. In *Bass*, as here, the defendant was accused of abusing one child, and the court of criminal appeals considered whether the defendant's opening statement advanced a fabrication theory that entitled the State to offer rebuttal testimony from other children the defendant had abused. During his opening statement, Bass's attorney said that the complainant's allegations were "pure fantasy" and "pure fabrication." *Id*. at 557. He also said that the allegations were "contrary to [Bass's] character, not worthy of belief" because "[a]s a pastor and minister, [Bass] is the real deal and the genuine article." *Id*. at 558. Finally, Bass's attorney characterized the complainant's accusation as "scattered, crumbling," and "bizarre." *Id*. The court of criminal appeals held that these statements advanced a fabrication theory that the State was entitled to rebut with extraneous-offense testimony. *Id*. at 563 ("[A] defense opening statement, like that made in this case, opens the door to the admission of extraneous-offense evidence, like that admitted in this case, to rebut the defensive theory presented in the defense opening statement.").

Gaytan attempts to distinguish *Bass* by arguing that his attorney did not clearly advance a fabrication theory and did not suggest that Gaytan's character put him above suspicion. While it is true that Gaytan's attorney did not use the words "pure fantasy" or "pure fabrication" like Bass's attorney, the *Bass* court did not suggest that such "magic words" are necessary to advance a theory of fabrication. Gaytan's attorney provided C.R.'s motive for fabricating ("[C.R.] got mad at Frank because he wouldn't play with her anymore [sic]"); he said that there was "no evidence to support" C.R.'s allegations; and he claimed that C.R.'s "story changes and grows and cracks." "[I]t is at least subject to reasonable disagreement" whether these statements suggested that C.R. was

9

fabricating her story; thus, the trial court did not abuse its discretion by admitting extraneous-offense evidence to rebut that suggestion. *Id*.

Gaytan argues that his attorney's comments were far less "extreme" than Bass's attorney's, so they should not be deemed to advance a fabrication theory. He argues that if comments like his are deemed to advance a fabrication theory, then "there will be precious few defendants who can offer <u>any</u> theory of the case in opening statement without the state being able to then introduce extraneous acts evidence." Gaytan argues that a "more reasonable reading of *Bass* indicates that the defendant may open the door to extraneous acts *where the defensive theory is extreme in nature*." Gaytan argues that this reading fits *Bass* and the cases it relies on, *Daggett v. State*, 187 S.W.3d 444, 453-54 (Tex. Crim. App. 2005), and *Powell v. State*, 63 S.W.3d 435, 438-40 (Tex. Crim. App. 2001).[3]

The problem with Gaytan's reading of *Bass* is that *Bass* plainly says nothing about limiting its holding to "extreme" defensive theories.[4] Moreover, the court of criminal appeals has reaffirmed *Bass*'s holding without limiting it to "extreme" theories: "a defense opening statement may open the door to the admission of extraneous-offense evidence to rebut defensive theories presented in that opening statement." *De La Paz v. State*, 279 S.W.3d 336, 345 (Tex. Crim. App. 2009). This is a simple proposition: if the opening statement presents a defensive theory, it opens

---

[3] In both of these cases, as in *Bass*, the defendants affirmatively represented that they would not or could not have committed the crimes alleged. *See Daggett v. State*, 187 S.W.3d 444, 453-54 (Tex. Crim. App. 2005) (defendant gave sweeping direct-examination testimony disavowing any sexual misconduct with minors); *Powell v. State*, 63 S.W.3d 435, 438-40 (Tex. Crim. App. 2001) (defendant claimed in opening statement that he lacked opportunity to molest complainant).

[4] Nor does Gaytan cite any other case suggesting that extraneous offenses are admissible to rebut only "extreme" defensive theories.

the door to rebuttal evidence in the form of extraneous offenses. As explained above, it is at least subject to reasonable disagreement whether Gaytan's opening statement advanced a defensive theory of fabrication; thus, the trial court did not abuse its discretion by allowing the State to present extraneous-offense evidence in rebuttal. *Bass*, 270 S.W.3d at 563.

Having concluded that Perez's and Tanya's testimony was admissible to rebut Gaytan's fabrication theory, we do not need to consider whether their testimony was also admissible to establish Gaytan's intent, motive, or knowledge under Rule 404(b). *See Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010) (we uphold trial court's evidentiary ruling if it was proper under any applicable legal theory).[5] We turn, then, to the second part of Gaytan's argument— namely, that even if Perez's and Tanya's testimony was admissible to rebut a defensive theory of fabrication, the trial court should have nevertheless excluded it because it presented a danger of unfair prejudice that far outweighed its probative value. *See* Tex. R. Evid. 403 ("Rule 403").

### *Rule 403—Probativeness Versus Danger of Unfair Prejudice*

Rule 403 states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Gaytan argues that the trial court should have excluded Perez's and Tanya's testimony under Rule 403 because (1) the testimony was not

---

[5] For the same reason, we do not need to address the State's argument that Perez's and Tanya's testimony was admissible to rebut a defensive theory of "lack of opportunity." It is not clear that Gaytan actually advanced such a theory at trial.

probative given how much time had elapsed since Gaytan allegedly abused the women[6] and (2) the testimony was unfairly prejudicial because it was "inherently inflammatory" in nature.

Regarding the amount of time that had elapsed (what we will call the "remoteness" issue), Gaytan notes that "the extraneous acts complained of" by Perez and Tanya "were twenty-four and twenty-eight years old at the time of trial."[7] He asserts that "not one case has upheld the admission of an extraneous act this remote."[8] He also asserts that "[c]ase law in this area is filled with examples of cases reversed on remoteness grounds with a far shorter lapse in time between the extraneous offense and the charged conduct."

Gaytan is correct that remoteness can significantly lessen the probative value of extraneous-offense evidence. *See Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd). This is because, logically, the passage of time allows things and people to change. *Cf. Miller v. State*, 549 S.W.2d 402, 403 (Tex. Crim. App. 1977) (witness cannot be impeached with excessively remote conviction because "a remote conviction is a poor indication of the accused's present character"). It is important to note, however, that remoteness alone is not sufficient to render an extraneous offense excludable under Rule 403. *See Corley v. State*, 987 S.W.2d 615, 620 (Tex. App.—Austin 1999, no pet.). Rather, remoteness is but one aspect of an offense's probativeness.

---

[6] Gaytan suggests that temporal remoteness factors into Rule 404(b) analysis as well as Rule 403 analysis. This suggestion is incorrect. *See Newton v. State*, 301 S.W.3d 315, 318 (Tex. App.—Waco 2009, pet. ref'd) (remoteness is component of Rule 403 analysis, not Rule 404(b) analysis).

[7] The State contests these figures, but for present purposes we can assume they are correct.

[8] In point of fact, this assertion is incorrect. *See, e.g.*, *id*. at 322 (upholding admission of twenty-five-year-old extraneous offense); *Norwood v. State*, No. 07-08-0101-CR, 2009 Tex. App. LEXIS 4979, at *13 (Tex. App.—Amarillo June 30, 2009, no pet.) (mem. op., not designated for publication) (upholding admission of thirty-year-old extraneous offense).

*See Newton*, 301 S.W.3d at 318. It is therefore an element of the factorial analysis that courts should conduct in deciding whether to exclude evidence under Rule 403:

> [A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnotes omitted). In evaluating these factors, a court should bear in mind that

> Relevant evidence may be excluded under Rule 403 only if its probative value is *substantially* outweighed by the danger of unfair prejudice. Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value.

*Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (emphasis added) (footnotes and internal quotation marks omitted). With these thoughts in mind, we analyze the Rule 403 factors as they apply to Perez's and Tanya's testimony.

### Factor 1: Inherent Probative Force

As already noted, because Perez's and Tanya's testimony concerned extremely remote events, the trial court could have reasonably found that its inherent probative force was significantly reduced. At the same time, because the testimony was remarkably similar to C.R.'s, the trial court

13

could have reasonably found that its inherent probative force was significantly bolstered.[9]  *See Newton*, 301 S.W.3d at 318.  Thus, at most, the first factor somewhat favors exclusion.

### *Factor 2:  Proponent's Need for Evidence*

This factor weighs strongly in favor of admission; without Perez's and Tanya's testimony, the State's case would have basically come down to C.R.'s word against Gaytan's.  *See Hammer*, 296 S.W.3d at 568 ("Rule 403 . . . should be used sparingly, especially in 'he said, she said' sexual-molestation cases that must be resolved solely on the basis of the testimony of the complainant and the defendant.").  There was no physical evidence or eyewitness testimony supporting C.R.'s allegations, and several of the State's witnesses (e.g., Jennifer Robinson, Laurie Charles, Janet Williams) essentially simply repeated what C.R. had told them.  *Cf. Newton*, 301 S.W.3d at 320 (State's need for extraneous-offense evidence was "considerable" because State had no physical evidence or eyewitness testimony).

### *Factor 3:  Tendency of Evidence to Suggest Decision on an Improper Basis*

Perez's and Tanya's testimony did "have a tendency to suggest a verdict on an improper basis because of the inherently inflammatory and prejudicial nature of crimes of a sexual nature committed against children."  *Id*.  Before Perez and Tanya testified, however, the court instructed the jury that it could only consider their testimony for proper purposes:

---

[9] Again, Perez and Tanya were, like C.R., Gaytan's nieces.  Both women testified that, like C.R., Gaytan molested them when they were roughly six years old by touching their vaginas or making them touch his penis.  Both women also testified that Gaytan molested them in a house belonging to a relative while other relatives were nearby.

14

If you find the State has proven the defendant's involvement in these other acts, if any, you may only consider this testimony as it may aid you, if it does, in determining the motive, intent, knowledge and a rebuttal of a defensive theory of the defendant in relation to the offense on trial and you may not consider those other acts for any other purpose.

The court included a similar instruction in the jury charge. We presume that the jury obeyed these instructions. *See Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003) (appellate courts presume jury follows instructions). Because the court did what it could to mitigate the improper influence of Perez's and Tanya's testimony, the third factor at most somewhat favors exclusion.

### Factor 4: Tendency of Evidence to Confuse or Distract Jury

This factor weighs in favor of admission; Perez's and Tanya's testimony was straightforward and directly relevant to the only issue in the case, namely whether Gaytan abused C.R. *See* Tex. R. Evid. 401 (evidence is relevant if it makes material fact more or less probable); *Bass*, 270 S.W.3d at 562-63 (agreeing with State's claim that when defendant stands accused of abusing one child, evidence that he abused other children in similar fashion is relevant).

### Factor 5: Tendency of Evidence to be Given Undue Weight by Jury

This factor concerns "a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds. For example, 'scientific' evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence." *Gigliobianco*, 210 S.W.3d at 641 (citation omitted). Perez's and Tanya's testimony was not prone to this tendency, as it concerned matters easily comprehensible by laypeople. Thus, this factor weighs in favor of admission.

15

***Factor 6: Likelihood that Evidence will be Too Time-Consuming or Repetitive***

Perez and Tanya were on the stand for relatively brief periods of time; their testimony occupies only thirteen pages of a trial transcript that spans more than 200. *Cf. Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (factor weighed in favor of admission where extraneous-offense testimony amounted to "less than one-fifth" of trial testimony). Furthermore, their testimony was not repetitive; indeed, it was critical to the State's case (as discussed above) and unlike any other evidence presented. Therefore, this factor weighs in favor of admission.

***Summing Up the Rule 403 Factors***

In sum, a few factors weighed against admitting Perez's and Tanya's testimony, and a few factors weighed in favor of admitting Perez's and Tanya's testimony. In such a situation, especially bearing in mind that "Rule 403" envisions exclusion of evidence only when there is a *clear disparity* between the degree of prejudice of the offered evidence and its probative value,"*Hammer*, 296 S.W.3d at 568, the trial court could have reasonably concluded that Perez's and Tanya's testimony should be admitted under Rule 403. Thus, we cannot say that the trial court abused its discretion by admitting the testimony. *See Newton*, 301 S.W.3d at 321-22. We overrule Gaytan's points of error concerning Rule 403.

### C.R.'s Testimony

Gaytan argues that the trial court erred by refusing to strike C.R.'s testimony after C.R. admitted that she could not directly recall being abused. We hold that this point of error is

waived because after C.R. made this admission, Gaytan's attorney asked her several more questions before moving to strike her testimony.

To preserve error regarding the admission of evidence, a party must make a timely objection or motion to strike. Tex. R. Evid. 103(a). To be timely, an objection or motion to strike must be made "as soon as the objectionable nature of the evidence [becomes] apparent." *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). If the objection or motion to strike is made any later, error is waived. *See Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2003); *see also Jasso v. State*, 112 S.W.3d 805, 813 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("The standard set by our high court for the timely assertion of objections is both demanding and unforgiving.").

Here, on cross-examination, Gaytan's attorney asked C.R. several questions about her direct-exam testimony and received several answers of "I don't know" or "I can't remember." He eventually asked C.R. point-blank: "[C.R.], do you remember anything about August of 2004?" She answered, "No." *That* was when Gaytan's attorney needed to move to strike C.R.'s previous testimony for lack of personal knowledge. *See Ethington*, 819 S.W.2d at 858 (to preserve error, motion to strike must be made as soon as basis for objection becomes apparent). He did not, however, move to strike her testimony until after he asked twelve more questions and received twelve more answers. He therefore waived error. *Cf. Lagrone v. State*, 942 S.W.2d 602, 617-18 (Tex. Crim. App. 1997) (finding objection untimely when appellant's counsel objected after prosecutor had spoken only four words following testimony in question). We overrule Gaytan's point of error concerning the denial of his motion to strike C.R.'s testimony.

*Legal Sufficiency*

Finally, Gaytan argues that the evidence was legally insufficient to support conviction on sixteen of his twenty assault counts. He bases this argument on the contention that he babysat C.R. during two separate time periods and there was no evidence that he abused C.R. during the time period (August to September 2004) on which the State elected to seek conviction. *See Phillips v. State*, 193 S.W.3d 904, 909-10 (Tex. Crim. App. 2006) (State must elect which transactions it will rely upon for conviction; "This allows the trial judge to distinguish the evidence which the State is relying on to prove the particular act charged in the indictment from the evidence that the State has introduced for other relevant purposes.").

The only evidence that Gaytan babysat C.R. during two separate time periods was C.R.'s statement, made during her videotaped interview, that she was in Ms. Presser's class when Gaytan babysat her. C.R. was in Ms. Presser's class during the 2003-2004 school year, but August and September 2004, the dates alleged in the indictment, were part of the 2004-2005 school year. Thus, Gaytan argues, we must infer that C.R. was talking about a separate period of babysitting in her videotaped interview, and therefore the State did not show that the dates alleged in the indictment actually corresponded to when C.R. might have been abused.

Although C.R. did state in her videotaped interview that she was in Ms. Presser's class when Gaytan babysat her, the jury also heard evidence from C.R.'s mother, Jennifer Robinson, that Gaytan babysat C.R. during August and September of 2004. Because we view the evidence in the light most favorable to the verdict, *Brooks*, 323 S.W.3d at 899, we must conclude that the jury believed Robinson on this point and disbelieved C.R. The jury is entitled to believe or disbelieve any portion of the evidence. *See Brown*, 270 S.W.3d at 568. It seems plausible that the jury simply

18

thought C.R. was mistaken about the timing of her abuse.[10]  Robinson's testimony provided a reasonable basis for the jury to conclude that Gaytan actually babysat C.R. during August and September of 2004, not while C.R. was in Ms. Presser's class.  Thus, the evidence was legally sufficient to support the dates elected by the State.  *See Brooks*, 323 S.W.3d at 899.  We overrule Gaytan's legal sufficiency issue.

## CONCLUSION

For the reasons stated above, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   January 21, 2011

Publish

_____

[10] On this point, it is worth noting that while C.R. stated in her videotaped interview that she was in Ms. Presser's class when Gaytan babysat her, at trial she could not remember whose class she had been in or who Ms. Presser was.

19