

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00043-CR

Justin Emar **MOORE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2010CR4143
Honorable Mary D. Roman, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  January 9, 2013

AFFIRMED

Justin Emar Moore was found guilty of three counts of aggravated sexual assault of a child and one count of indecency with a child by contact. At punishment, he pled true to the enhancement pleading in the indictment that alleged he had been previously convicted of an aggravated sexual assault of a child offense. He was sentenced to life imprisonment. On appeal, Moore argues that the trial court erred in admitting over his objection evidence of the prior extraneous offenses of aggravated sexual assault of a child and indecency with a child by

contact. The State responds that the trial court did not err because Moore's opening statement and cross-examination of the complainant opened the door to the admission of the evidence.

Ordinarily, extraneous-offense evidence is not admissible in the guilt/innocence phase of a criminal trial to prove that a defendant committed the charged offense in conformity with a bad character. *See* TEX. R. EVID. 404(b); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). However, extraneous offense evidence may be admissible when it has relevance apart from character conformity. *Devoe*, 354 S.W.3d at 469. In *Bass v. State*, 270 S.W.3d 557, 557, 563 (Tex. Crim. App. 2008), the Texas Court of Criminal Appeals held that the trial court did not abuse its discretion in admitting extraneous-offense evidence to rebut the defensive theory presented in the defense's opening statement that the complainant's allegations were "pure fantasy" and "pure fabrication." In so holding, the court explained,

> Our case law supports a decision that a defense opening statement, like that made in this case, opens the door to the admission of extraneous-offense evidence, like that admitted in this case, to rebut the defensive theory presented in the defense opening statement. *See Powell v. State*, 63 S.W.3d 435, 438-40 (Tex. Crim. App. 2001) (in prosecution for indecency with a child, defendant's opening statement that he lacked opportunity to molest the complainant under the circumstances of the charged offense opened the door to admission of extraneous-offense evidence that defendant molested others under almost identical circumstances to rebut defendant's lack of opportunity defensive theory); *see also Daggett v. State*, 187 S.W.3d 444, 453-54 (Tex. Crim. App. 2005) (in prosecution for sexual assault of a child under seventeen, defendant's sweeping direct-examination testimony disavowing any sexual misconduct with minors opened the door to admission of extraneous-offense evidence of defendant's sexual misconduct with another minor to rebut this sweeping testimony). This case law makes no categorical distinctions between "fabrication" defenses and "frame-up" or "retaliation" defenses.
>
> In this case, it is at least subject to reasonable disagreement whether the extraneous-offense evidence was admissible for the noncharacter-conformity purpose of rebutting appellant's defensive theory that the complainant fabricated her allegations against him and of rebutting the defensive theory clearly suggesting that appellant, as a "real deal" and "genuine" pastor, would not engage in the type of conduct alleged in the indictment. *See Daggett*, 187 S.W.3d at 453-54; *Powell*, 63 S.W.3d at 438. It is subject to reasonable disagreement whether this extraneous-offense evidence made these defensive theories less probable. *See id.*; *Montgomery*, 810 S.W.2d at 387. The trial court, therefore, did not abuse its

discretion to decide that the extraneous-offense evidence was admissible to rebut these defensive theories.

*Bass*, 270 S.W.3d at 563.

In *De La Paz v. State*, 279 S.W.3d 336, 345 (Tex. Crim. App. 2009), the court of criminal appeals relied on its opinion in *Bass*, explaining that like the defense in *Bass*, the appellant in its case "attacked one of the State's star witnesses" in opening statement when he said the following:

> When you look at all this and, specifically, Mr. Herrera's testimony, we'll show you he has an incentive, that he had an incentive to go to the prosecutors and say, hey, I'll tell you whatever you want to hear. And his incentive is he's trying to keep himself out of prison because we'll show you when he testified the first time in the grand jury he was given immunity.

*De La Paz*, 279 S.W.3d at 345. The court noted that during cross-examination of the State's witnesses, the "defense's basic attack was that both [witnesses] were lying or fabricating their present testimony concerning the drug deal for ulterior motives." *Id.* The court of criminal appeals then distinguished the defense attacking a witness's credibility from the defense advancing a theory of fabrication. *See id.* The court of criminal appeals criticized the court of appeals, explaining that the court of appeals had

> mistakenly analogized this situation to that in *Webb v. State*, 36 S.W.3d 164, 180-81 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (en banc), in concluding that general attacks on credibility may call into question the State's proof, but do not negate any element of the crime, [and thus are] not the type of defensive issue that can be rebutted with extraneous offense evidence.

*De La Paz*, 279 S.W.3d at 346 n.32 (quotations omitted). According to the court of criminal appeals, "no one suggested that any of these three witnesses is generally a liar, generally untruthful, or generally not worthy of belief." *Id.* at 346. The court explained that "[t]hese were not attacks upon the witnesses or appellant for having a bad character for truthfulness; these were accusations of lying about a specific type of event – the occurrence of a drug delivery – under a

specific set of circumstances." *Id.* The court concluded that "[i]n these circumstances, it is at least subject to reasonable disagreement whether the extraneous-offense evidence was admissible for the noncharacter-conformity purpose of rebutting appellant's defensive theory that [the State's witnesses] were lying about these specific events and had fabricated their testimony to please the prosecution." *Id.* at 346-47. Thus, the court held that the trial court did not abuse its discretion in admitting the extraneous-offense evidence "to rebut the defense position that it was the State's witnesses who were lying about the Vega drug deal." *Id.* at 347.

In the context of aggravated sexual assault of a child, the Austin Court of Appeals in *Gaytan v. State*, 331 S.W.3d 218 (Tex. App.—Austin 2011, pet. ref'd), examined whether the defense advanced a fabrication theory that would allow the State to submit extraneous-offense evidence in rebuttal. The Austin Court of Appeals first considered whether the defense advanced a fabrication theory while cross-examining the complainant. *Id.* at 224. During cross-examination, the defense asked the complainant about her allegations. *Id.* The complainant admitted that she had no direct memories of being abused by the defendant. *Id.* When the defense asked her about the basis of her testimony, the complainant said that she had reviewed her videotaped interview and had had several conversations with her mother. *Id.* The defense did not ask the complainant whether she had fabricated her allegations or why she had made an outcry. *Id.* Under these facts, the Austin Court of Appeals held that the defense's cross-examination of the complainant did not advance a fabrication theory entitling the State to offer extraneous-offense evidence in rebuttal. *Id.* The court explained that the responses elicited from the State's witnesses on cross examination "must be sufficient to construct a defensive theory before the State may introduce extraneous-offense evidence in rebuttal." *Id.* According to the court, "[m]erely challenging the complainant's credibility on cross-examination does not automatically open the door to rebuttal evidence." *Id.* The court concluded that the defense challenged the

complainant's credibility "but did not elicit responses from her that were sufficient to construct a defensive theory of fabrication." *Id.*

The Austin Court of Appeals then considered whether the defense advanced a fabrication theory sufficient to entitle the State to offer extraneous-offense evidence in rebuttal during opening statement. *Id.* In opening statement, the defense counsel stated:

> The defense in this case is real simple: this didn't happen. . . . What the evidence is going to show is that [the complainant] got mad at [the defendant] because he wouldn't play with her anymore [sic]. She made this statement [alleging abuse] and there's no evidence to support it . . . the story changes and grows and cracks, and there's no physical evidence.

*Id.* (alterations in original). The court held that this statement by defense counsel "was sufficient to raise a theory of fabrication that entitled the State to offer extraneous-offense evidence in rebuttal". *Id.* The court noted that the defendant attempted to distinguish *Bass* "by arguing that his attorney did not clearly advance a fabrication theory and did not suggest that [the defendant]'s character put him above suspicion." *Gaytan*, 331 S.W.3d at 225. The court explained that "[w]hile it is true that [the defense] attorney did not use the words 'pure fantasy' or 'pure fabrication' like Bass's attorney, the *Bass* court did not suggest that such 'magic words' are necessary to advance a theory of fabrication." *Id.* According to the Austin Court of Appeals, the defendant's attorney provided the complainant's motive for fabricating the allegations, said there was "no evidence to support" the complainant's allegations, and claimed that the complainant's "story changes and grows and cracks." *Id.* In analyzing these statements, the court concluded that it was "at least subject to reasonable disagreement whether these statements suggested that [the complainant] was fabricating her story." *Id.* Accordingly, the court held that the trial court did not abuse its discretion by admitting extraneous-offense evidence to rebut that suggestion. *Id.*

The Austin Court of Appeals further considered the appellant's argument that "if comments like his are deemed to advance a fabrication theory, then there will be precious few defendants who can offer *any* theory of the case in opening statement without the State being able to then introduce extraneous acts evidence." *Id.* (emphasis in original). The defendant argued that a "more reasonable reading of *Bass* indicates that the defendant may open the door to extraneous acts *where the defensive theory is extreme in nature.*" *Id.* (emphasis in original). The Austin Court of Appeals explained,

> The problem with [the defendant]'s reading of *Bass* is that *Bass* plainly says nothing about limiting its holding to "extreme" defensive theories. Moreover, the court of criminal appeals has reaffirmed *Bass*'s holding without limiting it to "extreme" theories: "a defense opening statement may open the door to the admission of extraneous-offense evidence to rebut defensive theories presented in that opening statement." *De La Paz v. State*, 279 S.W.3d 336, 345 (Tex. Crim. App. 2009). This is a single proposition: if the opening statement presents a defensive theory, it opens the door to rebuttal evidence in the form of extraneous offenses. As explained above, it is at least subject to reasonable disagreement whether [the defendant]'s opening statement advanced a defensive theory of fabrication; thus, the trial court did not abuse its discretion by allowing the State to present extraneous-offense evidence in rebuttal. *Bass*, 270 S.W.3d at 563.

*Gaytan*, 331 S.W.3d at 225-26.

Here, defense counsel in his opening statement stated that this was "not the first time [the complainant's mother] has made allegations against a person that they have had – sexually abused her child." He also stated, "[O]ur contention is that these allegations [] were created by [the complainant's mother] in order to strike revenge or get back at Mr. Moore for reasons that will be brought out in testimony, and that she elicited – she got her daughter involved in these . . . allegations [] made against Mr. Moore." "I believe that once you have heard all the testimony, that with careful deliberation you will go back into the jury room, discuss this matter amongst yourselves and that you will find that [the complainant's mother] got her child involved in a situation where she made up a story [and] got [the complainant] to go along with it."

According to defense counsel, "[W]e talked about how parents – how kids will do things to please their parent in that situation. The person that got caught up in that situation, I'm just trying to help them." We conclude that it is at least subject to reasonable disagreement whether these statements during opening statement suggested that the complainant was fabricating her story. *See Bass*, 270 S.W.3d at 226; *Gaytan*, 331 S.W.3d at 225. Therefore, the trial court did not abuse its discretion in concluding that the defense advanced a fabrication theory sufficient to entitle to the State to offer extraneous-offense evidence in rebuttal. *See Bass*, 270 S.W.3d at 226; *Gaytan*, 331 S.W.3d at 225.

In addition to opening statement, defense counsel pursued his fabrication theory through his cross-examination of the complainant. On cross-examination, defense counsel asked the complainant whether her mother "suggested" that she make these allegations against Moore. Defense counsel then more specifically asked, "Did your mama tell you to make these allegations against Justin [Moore]?" The complainant replied, "No." Defense counsel repeated the question: "She didn't tell you, she didn't coach you and say, you know, you need to say this and say that, have you discussed it?" The complainant replied, "No, but she did tell me not to be afraid, to come up here and tell the truth." Unlike the defense counsel in *Gaytan*, 331 S.W.3d at 224, these questions presented by defense counsel during cross-examination were not general credibility questions but instead were "accusations of lying about a specific event." *De La Paz*, 279 S.W.3d at 346. Through his cross-examination, defense counsel was advancing his fabrication theory that the complainant had fabricated the allegations against Moore because her mother had convinced her to do so in an attempt to get revenge against Moore. Like the Texas Court of Criminal Appeals in *De La Paz*, we conclude that "[i]n these circumstances, it is at least subject to reasonable disagreement whether the extraneous-offense evidence was admissible for the noncharacter-conformity purpose of rebutting appellant's defensive theory that [the State's

witness was] lying about these specific events and had fabricated [her] testimony to please [her mother]." *Id.* at 346-47. We further note that the extraneous-offense evidence presented by the State rebutted the defense's fabrication theory. The witness who testified about the extraneous offenses recounted events similar to the complainant's allegations. Therefore, after examining the record, we hold that the trial court did not abuse its discretion in concluding that the extraneous-offense evidence was admissible to rebut Moore's defensive fabrication theory. *See Bass*, 270 S.W.3d at 563. We affirm the judgment of the trial court.

Karen Angelini, Justice

Do not publish