**Opinion issued October 1, 2013.**



In The

# Court of Appeals

For The

## First District of Texas

———————————

NO. 01-12-00338-CR

———————————

**LESLIE KENNETH HOLTE, II, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1318785**

---

**MEMORANDUM OPINION**

A jury found Leslie Kenneth Holte, II, guilty of recklessly causing serious bodily injury to a child and assessed his punishment at confinement for twenty years and a fine of $10,000. Holte contends that the trial court abused its

discretion by admitting into evidence a video recording of the infant complainant, D.G., made while D.G. was in the hospital. Finding no reversible error, we affirm.

## Background

On the evening of December 17, 2010, D.G.'s mother, Amanda Blanton, went to work the night shift at the 59 Diner where she was a waitress. Blanton left D.G. at her apartment, under Holte's care. At 2:30 a.m., Blanton, who was still at work, saw that she had received a text message from Holte explaining that D.G. was hurt. Holte informed Blanton that D.G. had a bruise and a bump on the back of his head. When Blanton arrived at her apartment, Holte was playing video games in the living room and D.G. was in his crib. When Blanton lifted D.G., his body went limp. D.G. had bruises around his eyes, rug burns on his chin and nose, a red spot in the middle of his forehead, and a large bump on the back of his head. Holte said that he had dropped D.G. on the carpet.

After Blanton took D.G. to the nearest hospital, D.G. was taken by life-flight to Children's Memorial Hermann Hospital where he underwent emergency surgery. Holte then told Blanton that he had dropped D.G. twice, rather than once. D.G. was in a coma for one month after surgery and in the hospital for six months. He required a second surgery to install a permanent shunt as his spinal fluid would not drain.

Dr. Stephen Fletcher, the Chairman of Pediatric Neurosurgery at Children's Memorial Hermann Hospital, performed D.G.'s surgery and testified that D.G. had suffered an "eggshell fracture" and that more force was required to cause this type of fracture than would result from an accidental fall, even if D.G. had struck a linear edge. Dr. Rebecca Giradet, a pediatrician at The University of Texas Medical School and the Medical Director for the child abuse team, examined D.G. and testified that, based on the severity of DG's brain injury, D.G.'s injuries were not consistent with two accidental household falls.

The trial court admitted, without objection, State's exhibits 6 through 13, which were photographs showing D.G. in the hospital with several devices and tubes running to and from his body. State's exhibit 14, a 17-second video showing D.G. still in the hospital after he had emerged from his coma, was admitted over Holte's objection. Blanton later testified that D.G. could no longer see, swallow, or say the words he had learned before his injury. Dr. Fletcher testified that D.G. was permanently injured and will have lifelong learning disabilities.

On appeal, Holte contends that the trial court abused its discretion by admitting the video of D.G. because the video's probative value is substantially outweighed by the danger of unfair prejudice.

## Rule 403 Challenge

### A. Standard of Review

We review a trial court's decision to admit evidence for an abuse of discretion. *See Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006); *Wolfberg v. State*, 73 S.W.3d 441, 443 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). If the trial court's decision is correct on any theory of law applicable to the case, we will uphold the decision. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). "When a trial court further decides not to exclude the evidence, finding that the probative value of the evidence is not outweighed by the danger of unfair prejudice, this decision too shall be given deference." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

### B. Admissibility of Video

In his sole point of error, Holte contends that the trial court abused its discretion by admitting State's exhibit 14, a video and audio recording of D.G. in the hospital. Holte maintains that even if the recording is relevant, its probative value is substantially outweighed by the danger of unfair prejudice because the video showed D.G. "moaning in pain and discomfort" and the emotional impact of

the recording threatened the jury's ability to decide the case on a rational basis. Holte further maintains that the recording, particularly the audio of D.G. "moaning," was unnecessary because the State had an abundance of evidence to prove serious bodily injury. Holte contends that the fact that he received the maximum sentence as a probation-eligible defendant, even though the State failed to show intent, demonstrates that the error in admitting the video was not harmless. The State responds that the probative value of the video is not substantially outweighed by the danger of unfair prejudice because the video shows the serious nature of D.G.'s injuries—an element of the charged offense—and corroborates Blanton's testimony. Furthermore, the State argues even if the trial court erred in admitting the video, the error was harmless.

Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." TEX. R. EVID. 403. In conducting a Rule 403 balancing test, courts should consider: (1) the inherent probative force of the proffered evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate its probative force, and (6) the likelihood that

5

presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Under the first factor, we examine the probative value of the evidence. *Gigliobianco*, 210 S.W.3d at 641. The video had probative value because it demonstrated the seriousness of D.G.'s brain injury insofar as it depicts D.G.'s inability to focus and loss of vision and motor skills. Videotapes are considered in the same manner as photographs. *See* TEX. R. EVID. 1001(a). "Generally, a photograph is admissible if verbal testimony as to matters depicted in the photographs is also admissible." *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). After the video was admitted, Blanton testified, without objection, that once D.G. emerged from his coma, he was no longer able to see, swallow, or speak words he had previously learned. Because this is what is depicted in the video, we conclude this factor weighs in favor of admissibility. *Gigliobianco*, 210 S.W.3d at 641.

For the second factor, we examine the State's need for the evidence. *Gigliobianco*, 210 S.W.3d at 641. Holte argues that the "State had an abundance of other evidence to prove serious bodily injury," making the audio recording of D.G. moaning unnecessary. There was other evidence—testimonial and documentary—regarding D.G.'s serious bodily injury, but the video was the only

exhibit that visually demonstrated the long-term effects of D.G.'s brain injuries. *See generally Peterson v. State*, 137 S.W.3d 739, 746 (Tex. App.—Houston [1st Dist.] 2004, pet ref'd) (finding contested exhibit probative as it was the only exhibit that showed victim's injuries, not covered by bandages, while she was still alive). The trial court could have reasonably concluded that the video aided the jury's understanding of Blanton's testimony regarding the long-term effects of D.G.'s injury as it showed D.G.'s diminished ability to see or speak. This factor weighs in favor of admissibility. *Gigliobianco*, 210 S.W.3d at 641.

Under the third factor, we examine the "tendency of the evidence to suggest decision on an improper basis." *Id.* Evidence might have this tendency if "it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence." *Id.* Holte argues that the emotional nature of the evidence is undeniable and the danger of unfair prejudice is inherent in seeing and hearing an infant moaning. The State responds that the video is far less graphic than previously admitted still images of D.G., still bandaged, requiring ventilator assistance. *See Peterson*, 137 S.W.3d at 747 (holding evidence admissible and noting that appellant does not challenge the trial court's admission into evidence of several other, more graphic, photographs that depicted the nature and extent of the child's burn injuries). When the video was recorded, D.G. was no longer in a coma, his facial injuries had healed, and his surgical scar was not visible. The

video has no narration, and the audio recording does not suggest D.G. is crying or in pain. In short, the recording depicts nothing more emotional or graphic than the photographs. *See Gallo*, 239 S.W.3d at 762–63. This factor weighs in favor of admissibility. *Gigliobianco*, 210 S.W.3d at 641.

For the fourth factor, we examine the tendency of the evidence to confuse or distract the jury from the main issue. *Id.* "Evidence that consumes an inordinate amount of time to present or answer, for example, might tend to confuse or distract the jury from the main issues." *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007). Here, the video of D.G. was 17 seconds long, showed the child in the healing stages of his recovery, and related directly to an element of the charged offense. *See Gigliobianco*, 210 S.W.3d at 642 (holding that breath test results related directly to the charged offense, so the jury could not possibly have been distracted, regardless of the time required to present the results). This factor weighs in favor of admissibility. *Id.* at 641.

Under the fifth factor, we weigh "any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence." *Id.* Here, the video was presented to depict D.G.'s long-term injuries that could not be adequately conveyed in a photograph—specifically his inability to focus or control eye movement. The evidence was not of a technical or scientific nature; rather, it concerned a matter "comprehensible by laypeople."

*Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd).  The trial court could have reasonably concluded that the video did not have any tendency to be given undue weight by the jury.  This factor weighs in favor of admissibility.  *Gigliobianco*, 210 S.W.3d at 641.

Finally, under the sixth factor we consider the time required to develop the evidence and whether the video merely repeated evidence already admitted.  *Id.* at 641–42.  The video lasted 17 seconds and was not repetitive as it was the only exhibit that was able to show D.G's loss of eye control.  *See generally Peterson*, 137 S.W.3d at 746 (finding contested exhibit probative as it was the only exhibit that showed victim's injuries, not covered by bandages, while she was still alive).  Thus, its presentation did not "consume an inordinate amount of time or merely repeat evidence already admitted."  *Gigliobianco*, 210 S.W.3d at 641–42.  This factor weighs in favor of admissibility.  *Id.* at 642.

Balancing all of the factors, we conclude that the trial court did not abuse its discretion in admitting State's exhibit 14.

We overrule Holte's sole point of error.

## Conclusion

We affirm the trial court's judgment.


                                    Rebeca Huddle
                                    Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish.  TEX. R. APP. P. 47.2(b).