Murray HAMMER, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–07–00072–CR.

Court of Appeals of Texas,
San Antonio.

Feb. 27, 2008.

Rehearing Overruled April 22, 2008.

Trent C. Rowell, Stockdale, TX, for Appellant.

Rene M. Pena, Criminal District Attorney, Mark Ledet, Assistant District Attorney, Floresville, TX, for Appellee.

Sitting: KAREN ANGELINI, Justice, REBECCA SIMMONS, Justice, STEVEN C. HILBIG, Justice.

## MEMORANDUM OPINION

Opinion by: REBECCA SIMMONS, Justice.

Appellant Murray Hammer was convicted by a jury of two counts of indecency with a child and sentenced to fifteen years confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Hammer asserts the trial court erred in excluding impeachment evidence of the complainant's previous false allegations of sexual assault in violation of the Confrontation Clause. We affirm the judgment of the trial court.

### FACTUAL BACKGROUND

During the summer of 2005, fifteen year old P.H. went to live with her father, Appellant Hammer. During this time, P.H. was being treated with the prescription medications Prozac and Seroquel. Both medications cause drowsiness and deep sleep. P.H. alleged that in late August or early September of 2005, after drinking with family friends and Hammer, she fell asleep. She woke up on the couch with her pants and underwear removed and Hammer standing over her. She put her clothes back on and moved into bed with her "aunt" and, again, fell asleep. P.H. next remembers being woken by her father "spooning" her with his hands on her groin. She then moved to the couch. P.H. testified that Hammer apologized the following day, explaining that he was drunk and sorry. According to P.H., a similar incident occurred approximately two weeks later at her grandmother's home. She awoke to her father "spooning" her with his hands down her pants, in the front, rubbing her. When her father realized that she was awake, he jumped up and left, only to repeat the same activity again later that night. After P.H. rebuked him a second time, Hammer allegedly told his daughter, "If you ever change your mind, baby girl, let me know."

During trial, the defense attempted to introduce evidence that P.H. had previously falsely accused other persons of unwanted sexual contact. The trial court determined the prejudicial effect of the evidence outweighed its probative value and excluded the evidence. Hammer argued such a denial was a violation of his right to confront witnesses and challenge their truthfulness. Hammer's counsel made a bill of exception with regard to the following evidence excluded by the trial court:

(1) journals in the possession of child protective services allegedly containing numerous rape allegations;

(2) testimony by Shonna Makuta that P.H. accused a third party of rape to cover up her sexual encounters with a boyfriend;

(3) testimony by Shonna Makuta by P.H. that other persons had molested her;

(4) testimony by Patricia Mossmeyer by P.H. that "every one of her mother's boyfriends molested her;"

(5) testimony by Patricia Mossmeyer that P.H. and Mossmeyer's granddaughter were held by five men, with knives to their throats and that they were raped;

(6) allegations that P.H. was caught by school officials "lying on the ground" with her boyfriend; and

(7) allegations that P.H. lied about skipping school.

P.H. refuted some of the allegations of sexual conduct and several others were never pursued.

The State's case consisted of the testimony of P.H., her Mental Health and Mental Retardation case manager, the investigating police officer, the child protective services' investigator and a doctor to discuss the effects of the medication that P.H. was taking at the time of the incident. There was no physical evidence of the sexual contact. Hammer was convicted by the jury of indecency with a child.

On appeal, Hammer asserts that the trial court erred by refusing to allow him to cross-examine P.H. regarding false allegations she made against other individuals. Specifically, Hammer asserts these allegations are relevant to her credibility and that he, therefore, should have been allowed to cross-examine her regarding the allegations. Hammer contends the trial court erred in denying him the right to confront P.H., as well as other witnesses regarding P.H.'s false allegations.

### STANDARD OF REVIEW

A trial court's decision to exclude evidence is reviewed under an abuse of discretion standard. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App.2000). A trial court does not abuse its discretion as long as the decision to admit evidence is within the zone of reasonable disagreement. *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex.Crim.App.1991). If evidence exists supporting the decision to exclude evidence, there is no abuse of discretion, and the decision of the trial court will not be reversed. *Id.*

### EXCLUDED TESTIMONY

Because the State's case rested on the credibility of P.H., Hammer argues it was crucial for the defense to present evidence that P.H. was untruthful and had made similar allegations of sexual assault that were untrue. Hammer argues the excluded evidence was admissible as an exception to Rule 608(b), Texas Rules of Evidence and in accordance with the Confrontation Clause of the Constitution.

### A. Texas Rule of Evidence 608(b)

Texas Rule of Evidence 608(b) precludes the admission of specific conduct to attack a witness' credibility. Hammer argues that an exception exists in cases involving sexual abuse where the Confrontation Clause would require the admission of the evidence. The Court of Criminal Appeals addressed whether instances of prior bad acts were admissible in sexual abuse cases to attack credibility in *Lopez v. State,* 18 S.W.3d 220 (Tex.Crim.App.2000). In *Lopez,* after being convicted of aggravated sexual assault and indecency with a child, the appellant argued the trial court erred in excluding impeachment evidence of the victim's prior false accusations that the victim's mother had previously thrown him against a washing machine. *Id.* at 222. The Court of Criminal Appeals confirmed that absent evidence of a conviction of a crime, Rule 608(b) precludes the admission of evidence of bad acts for the purpose of

attacking credibility. *Id.* at 223. The court declined "to create a per se exception to [Rule 608(b)]," in sexual abuse cases but acknowledged "the Confrontation Clause occasionally may require the admissibility of evidence the Rules of Evidence would exclude." *Id.* at 225. We, therefore, turn to the Confrontation Clause to determine whether evidence of P.H.'s prior accusations of sexual abuse was admissible.

## B. Confrontation Clause

■ The Sixth Amendment protects a defendant's right to be confronted with the witnesses against him. U.S. CONST. AMEND. VI; *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *Carroll v. State,* 916 S.W.2d 494, 497 (Tex.Crim.App.1996). The right to confront a witness should be liberally construed to properly protect the accused's constitutional rights, but trial courts have "broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence." *Lopez,* 18 S.W.3d at 222.

■ Each Confrontation Clause issue must be considered on a case-by-case basis, and the defendant's right to cross-examine the witness must be weighed against any risk factors associated with the admission of the evidence. *Id.* "In weighing whether evidence must be admitted under the Confrontation Clause, the trial court should balance the probative value of the evidence sought to be introduced against the risk its admission may entail." *Id.* We turn now to the excluded evidence to determine whether the Confrontation Clause mandates its admission.

*1. Alleged Claim of Rape by P.H. Regarding the Sexual Encounter with Her Boyfriend*

The trial court excluded any testimony regarding an alleged false claim of rape made by P.H. in relation to a sexual encounter with her boyfriend. Hammer directs us to the nurse's notes contained in the medical records that reflect P.H.'s statement that: "[a]t first it was kind of consensual but then I told him to stop and he didn't." Hammer urges that unlike *Lopez,* where it was unclear whether the alleged accusation was false, the medical records establish that P.H. told the nurse that her claim of rape was false. Despite the records, P.H. denied she ever claimed a rape occurred. During direct examination on the bill of exception, P.H. testified that she never said her sexual encounter with her boyfriend was not consensual, but did admit that she gave a different person's name, rather than her boyfriend's name to the sexual assault nurse. It is uncontested that no police report was ever made regarding the incident.

*2. P.H.'s Journal Obtained by Child Protective Services*

Hammer claimed that there were journals of P.H.'s that contained false allegations of sexual abuse. Dina Lemus, with Child Protective Services, acknowledged that while P.H. was on her caseload, she had received a journal from P.H. Lemus could not, however, testify to the contents of the journal. Thus, there is simply no evidence of the contents of the journal.

*3. Testimony of Shonna Makuta*

During her proffer, Shonna Makuta testified about the alleged rape involving P.H.'s boyfriend which was similar to P.H.'s version. P.H. never told Makuta her boyfriend raped her but identified a third party as her partner to protect her boyfriend. Additionally, Makuta testified that P.H. had made allegations of "other persons molesting her," including her un-

cle, but Makuta did not know whether any of the allegations were false.

### 4. Patricia Mossmeyer

Patricia Mossmeyer, Hammer's mother, testified that P.H. told her that "every one of her mother's boyfriends molested her;" yet, Mossmeyer did not know whether such statements were false. Mossmeyer also testified that when P.H. and her cousin ran away, they called her and, claimed that they were held at knife-point and raped by five men to account for their absence. When P.H. and her cousin returned home, no action was taken as Mossmeyer indicated she knew that the account was not true.

### 5. Margarita Higdon

Margarita Higdon, Hammer's girlfriend and the mother of his son, testified that after P.H. moved in with her and Hammer, that (1) Higdon received a telephone call from the school that P.H. had been caught in the "Ag. Barn ... lying on the ground with a boy," (2) that P.H. had skipped school, and (3) that P.H. had accused an uncle of molesting her when P.H. was young.

### Analysis

 In the instant case, the testimony in question amounts to a "general" attack on P.H.'s credibility. For the evidence to have probative value, there must be evidence that the prior accusations were similar to the accusations in the instant case, and there must be evidence that the prior accusations were false. *Lopez*, 18 S.W.3d at 222–23. The falseness of most of the allegedly false accusations is not apparent from the record. Hammer failed to establish (1) the content of the journals; (2) that P.H. ever truly accused a third party of rape to cover her sexual encounters with her boyfriend; and (3) that P.H.'s allegations of being molested by her uncle and

mother's boyfriends were, in fact, false. Although P.H.'s grandmother testified that P.H. and her cousin lied when they claimed they were being held captive and raped, it was clear this was merely an excuse to hide their absence, which was quickly discounted upon their return. No formal police report was ever made. Without supporting evidence to establish the allegations were false, such evidence is likely to unduly prejudice the jury and holds little probative value.

Portions of the excluded evidence involved activities that were not similar to the sexual abuse in the present case. The excluded testimony regarding P.H. "lying on the ground with her boyfriend" and skipping school could not be said to closely resemble P.H.'s accusations made against Hammer. Likewise the claim of kidnapping and rape mentioned above is not similar to the allegations made against Hammer. These accusations are unlike those where the evidence was clear that the child victim's prior accusations of sexual abuse were similar and false. *See Polvado v. State*, 689 S.W.2d 945, 948–49 (Tex.App.-Houston [14th Dist.] 1985, pet. ref'd) (audio tapes in which child-victims recanted previous sexual assault accusation against appellant erroneously suppressed on issue of whether victims were coerced into recanting); *Thomas v. State*, 669 S.W.2d 420, 422 (Tex.App.-Houston [1st Dist.] 1984, pet. ref'd) (child victim admitted on cross-examination that prior claim of rape by a "tall and skinny, bushy hair" man was false).

The trial court heard the proffered testimony and was able to determine that what little probative value, if any, the alleged testimony would have provided, was far outweighed by the danger of unfair prejudice, confusion of the issues and embarrassment to the complainant, especially given her young age. We cannot say that

the trial court's determination is outside the zone of reasonable disagreement. Following the rationale of *Lopez*, the trial court could have reasonably concluded that the general attack on P.H.'s credibility, without more, was unfairly prejudicial, and outweighed any probative value. We, therefore, overrule this issue on appeal.

### CONCLUSION

The testimony in question was inadmissible under Rule 608(b) and the Confrontation Clause did not mandate its admissibility. Since, the evidence supports the trial court's determination that the probative value was outweighed by the prejudicial effect of the excluded testimony, we cannot say the trial court abused its discretion. Accordingly, the judgment of the trial court is affirmed.