# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00462-CR

**Joel David James, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2011-195, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Joel David James guilty of continuous sexual abuse of his minor daughter and assessed punishment at ninety-nine years in prison. On appeal, appellant contends that the trial court erred by admitting evidence of an extraneous sexual offense and by submitting a limiting instruction regarding it, by admitting evidence relating to a condom found at his house, by prohibiting him from cross-examining his daughter concerning her other sexual behavior, and by not instructing the jury on the lesser-included offense of indecency with a child. We will affirm the judgment of conviction.

## BACKGROUND

We will set out the complaining witness's testimony, reserving discussion of other evidence as it relates to specific issues on appeal. Appellant's daughter testified that, between September 1, 2007, and the summer of 2010 (from when she was nine years old to when she was twelve years old), her father sexually abused her in a variety of ways when her mother was

out of town. She recounted details of three incidents of sexual abuse spaced over intervals greater than thirty days and gave general descriptions of other incidents. She said appellant had sexual intercourse with her as many as five times. She said he also contacted her sexual organ with his mouth at least twice and caused his sexual organ to contact her mouth on "[m]uch more than ten times" during that same period. She testified that he penetrated her sexual organ with his fingers on more than one occasion and caused her to put her hand on his sexual organ at least once during this period. He sometimes used a condom, was always drunk on whiskey he drank from a barbecue restaurant mug, and often played pornographic movies during these incidents. He did not threaten her, but asked her not to tell her mother and took her shopping afterward. He told her this activity was normal between parents and children, which she believed until she attended an educational program.

Appellant's daughter testified that, even after the program, she did not tell anyone what had happened because she did not want to add to the tension in her parents' marriage. One night, however, her parents had an argument that began over her failure to do the dishes that progressed into an argument over whether her mother was taking adequate care of her and ended with her mother going outside to cool off. Appellant's daughter testified that she decided to tell her mother some of what appellant had done. Although her mother did not believe her at first, she soon decided that her daughter would not lie about such activities. Appellant's daughter was then interviewed at the children's advocacy center ("CAC").

On cross-examination, appellant's daughter discussed discrepancies between her testimony at trial and her interview at the CAC. She conceded that she had only described two incidents of sexual intercourse when interviewed at the CAC, but said she limited the scope of

2

her disclosure to limit the trouble her father would face. She testified that when she spoke at the CAC, she wanted to get her father in some trouble, but not the degree of trouble she perceived he would encounter if she told everything that had happened. She conceded that she had not mentioned in the CAC interview her father using condoms or playing pornographic movies during the abuse. She also testified that her brothers were the favored children and that she was blamed for things that went wrong in the family. She did not recall, but did not deny, that she had gotten in trouble for charging purchases on her cell phone and on the internet with appellant's debit card shortly before her outcry. She also did not recall that financial stresses caused her parents to discontinue her tumbling class, but she did remember no longer taking tumbling. She denied that she was making false accusations of abuse in retaliation for the termination of her tumbling class.

Other testimony at the trial came from a police officer who testified about finding a used condom along with adult videos in appellant's bedroom, forensic scientists from the Texas Department of Public Safety's laboratory who testified about their DNA tests on the condom, appellant's wife, and appellant's neighbors from when he was a teenager who testified that appellant sexually assaulted a child when he was seventeen years old.

## DISCUSSION

Appellant contends that the trial court erred by admitting evidence of an extraneous sexual offense he committed, by submitting a limiting instruction that allowed the jury to consider evidence of that extraneous offense, by admitting into evidence a condom found at his residence as well as the results of the DNA examination of that condom, by prohibiting him from cross-examining his daughter concerning her report of an attempted sexual assault by her older brother,

3

and by not giving the jury his requested instruction regarding a lesser-included offense of indecency with a child.

**Did the trial court err by admitting the extraneous-offense evidence?**

During the guilt-innocence phase, the State offered testimony about a 1983 incident in which appellant, then seventeen years old, made his sister's seven- or eight-year-old friend undress and then put his penis in her mouth and her hand. That victim and her mother both testified in this trial. The trial court overruled appellant's objections that the probative value of this evidence was outweighed substantially by its prejudicial effect and that it concerned an extraneous offense offered for character conformity and not for any permissible purpose. *See* Tex. R. Evid. 403, 404(b).

We review a trial court's decision to admit or exclude evidence for an abuse of discretion, and will uphold the ruling as long as it is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). This Court has affirmed a trial court's admission of evidence relating to previous offenses to rebut the defensive theory of fabrication. *Gaytan v. State*, 331 S.W.3d 218, 224-26 (Tex. App.—Austin 2011, pet. ref'd). In *Gaytan*, the defense suggested in opening argument that the victim might have fabricated her story, so the trial court admitted testimony that the defendant had sexually assaulted other children almost thirty years before. *Id*. at 224.

Here, appellant questioned his daughter on whether she made the allegations against him in retaliation for various disciplinary actions. We cannot say that the trial court abused its discretion by deciding that this defensive strategy made the evidence of the previous incident admissible under *Gaytan* to help prove that she did not fabricate her allegations. *See id*. at 225-26. Nor can we say that the trial court abused its discretion by concluding that the danger of unfair

4

prejudice, confusion of issues, or misleading the jury did not substantially outweigh the probative value of the evidence. *See id.*; *see also* Tex. R. Evid. 403. Because of the similarity of the issues, the analysis of this issue in *Gaytan* is instructive. As that court concluded, (1) the probative value of evidence of similar events is reduced by remoteness in time, but is bolstered by the similarity of conduct; (2) the evidence added some weight to the accusations in a he-said/she-said case; (3) the limiting instruction should have blunted the possibility that the evidence suggested a verdict on an improper basis of inflammatory testimony; (4) the testimony about the previous offense was straightforward and should not have confused anyone, about either its content or its relation to the instant case; (5) the additional testimony did not carry with it undue added weight like expert testimony, despite its emotional freight; and (6) the additional testimony did not take up too much time. *Gaytan*, 331 S.W.3d at 227-28. We conclude that the trial court did not abuse its discretion by admitting the evidence of the extraneous offense.

**Did the trial court err by instructing the jury that it could consider the extraneous-offense evidence for a limited purpose?**

The trial court instructed the jury regarding extraneous offenses as follows:

> [I]f you find the State has proven beyond a reasonable doubt the defendant's involvement in these other acts, if any, you may only consider this testimony as it may aid you, if it does, in determining the defendant's intent, motive, opportunity, preparation, knowledge, absence of mistake or accident, or in rebuttal of a defensive theory of the defendant in relation to the offense on trial and you may not consider those other acts for any other purpose.

Appellant contends on appeal that this instruction permitted the jury to consider the evidence for theories that were not put forward.

5

We review a claim of jury-charge error using the procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). We first determine whether there is error in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case." Tex. Code Crim. Proc. art. 36.14. If the court erred in giving its charge and appellant objected to the error at trial, reversal is required if the error causes some harm to appellant's rights. *See Almanza*, 686 S.W.2d at 171.

This instruction conforms with the language of Texas Rule of Evidence 404(b), although the instruction excluded the ground of identity from the jury's consideration. The rule permits the jury to consider the extraneous-offense evidence for the listed purposes. As discussed above, appellant indicated through cross-examination that his daughter fabricated the allegations, and the rule and the instruction permit the jury to consider the extraneous offense to rebut that theory. We find no abuse in the trial court's choice to give this instruction that complies with the rule of evidence.

**Did the trial court err by admitting the condom and DNA analysis on it?**

Appellant contends that the "substandard collection methods" of the police officers who searched his house increased the probability of contamination of the evidence—a condom and DNA analysis of it—that prejudiced him. *See* Tex. R. Evid. 403, 901. Appellant's now ex-wife testified that several people helped her move out of their family house before the search occurred, that her older son found a condom in the master bedroom, and that she alerted the police. She considered the condom significant because she had a tubal ligation in 1999, and appellant did not use a condom with her afterwards. Although the officers wore gloves when searching appellant's

6

house, they did not change their gloves every time they picked up an item. They found the condom between the bed and the wall in the master bedroom amidst debris like drink cans. Appellant contends that the moving of items and the officers' failure to change gloves raise a risk of cross-contamination of the DNA on the condom that undermines the authenticity of the evidence.

Appellant challenges the reliability of evidence from Department of Public Safety forensic scientist Heather Dragma, who testified that she compared DNA found inside and outside of the condom to DNA from appellant and possibly his family. She said that the sample from the outside of the condom was a mixture that included appellant's DNA (the likelihood of selecting an unrelated person at random to be the contributor other than appellant was at minimum 1 in 120.6 quadrillion) and an unknown other. She concluded that appellant was the major contributor of DNA on the outside of the condom, but only that he could not be excluded as the contributor of DNA of the mix from the inside of the condom. She testified that evidence gatherers should change gloves when handling multiple items to avoid DNA from one item getting onto another item. Another DPS forensic scientist, Emma Becker, testified that she did further testing on the inside of the condom. She, too, found that appellant could not be excluded as a contributor. She also found that appellant's ex-wife could be excluded as a contributor, and that neither the victim nor her older brother could be excluded.

An exhibit must be supported by proof that the item offered is what its proponent claims. *See* Tex. R. Evid. 901(a); *see also Avila v. State*, 18 S.W.3d 736, 740 (Tex. App.—San Antonio 2000, no pet.). Appellant does not dispute that a condom was found in his master bedroom or allege mishandling of the condom in the DNA lab. There is no evidence of deliberate tampering with evidence before, during, or after its collection, only speculation

7

that appellant's DNA might have made its way onto or into the condom by some means of contamination. Such a question regarding the means by which the DNA was deposited is not a challenge to the chain of custody, the authenticity, or identification of the evidence, but concerns the meaning and weight given to the evidence. *Cf. Dossett v. State*, 216 S.W.3d 7, 21 (Tex. Crim. App. 2006) (apparent gaps in chain of custody of evidence go to weight, not admissibility). We cannot say that the trial court abused its discretion by finding the evidence sufficiently authenticated and identified to satisfy Rule 901.

Relevant evidence may be excluded when its probative value is substantially outweighed by the potential of unfair prejudice, confusion of the issues, or misleading the jury. Tex. R. Evid. 403. Appellant contends that the possibility of alternate means by which his DNA might have landed on the condom diminishes its probative value and introduces a risk of unfair prejudice. But appellant's ex-wife's testimony that they had not used condoms with each other for almost eleven years, coupled with appellant's daughter's testimony that he used condoms with her, lends probative value to the presence of the condom in the master bedroom and the presence of his DNA on it. The predominance of appellant's DNA on the condom gave the link to appellant more heft. To be sure, a jury's possible conclusion that appellant used the condom does not by itself substantiate the charges against him. However, given that the rule permits exclusion of evidence only if the probative value is *substantially* outweighed by *unfair* prejudice and that the standard of review permits us to find error only for an abuse of discretion, we cannot say that the trial court erred by overruling the Rule 403 objection to evidence regarding the condom found in appellant's bedroom and the DNA taken from it.

8

**Did the trial court err by prohibiting appellant from cross-examining his daughter about her alleged sexual conduct with her brother?**

Appellant sought to question his daughter about her report to a forensic investigator that her brother tried to have "sexual relations" with her on the same day that she said that appellant did the last time in 2010. The trial court sustained the State's objection based on the evidentiary rule providing that, in a prosecution for sexual assault, reputation or opinion evidence regarding a victim's other sexual behavior is not admissible. Tex. R. Evid. 412. Appellant's daughter undisputedly did not include an allegation about her brother when making her initial outcry about her father's conduct, and seemed to back away from such an allegation during her trial testimony. Appellant contends that, by making an outcry about him but not about her brother, the victim showed bias against him about which he should have been allowed to cross-examine her. *See* Tex. R. Evid. 412(b)(1)(C). He also contends that he should be permitted to confront the victim on this basis to show ill-feeling, bias, or motive. *See* U.S. Const. amend. VI. Appellant later contended that the evidence of her failure to outcry about her brother would have rebutted or explained the DNA evidence.

Appellant relies on *Hammer v. State*, in which the court of criminal appeals held that the trial court erred by prohibiting the defendant from asking questions regarding her sexual history that might have shown bias. *See* 296 S.W.3d 555, 562-63 (Tex. Crim. App. 2009). In that case, a teenager accused her father of sexually assaulting her. *Id.* at 558. The defendant sought to introduce evidence that his daughter resented his taking her to the hospital for a sexual-assault examination concerning a two-day period during which she had run away from home. *Id.* at 559. The daughter told the reporting nurse that her father wanted the examination to prove that she had sex with one of the guys she ran away with. The report stated that the daughter was angry with her father. The

9

daughter reported to the nurse that she engaged in sexual activity with one of her fellow runaways, an encounter that she said began as consensual but then went too far. She also reported previous sexual abuse by her uncle of a type that tracked the allegations underlying her accusations against her father. *Id.* The defendant also wanted to introduce testimony from another witness whom the daughter allegedly told that, when she ran away, she had consensual sex with someone other than the person she reported to the nurse examiner. *Id.* The trial court excluded the evidence and the court of appeals affirmed that decision, finding that the excluded testimony was a general attack on the daughter's credibility, did not establish that her prior accusations were false, and did not show that the prior accusations were similar to those in the case being tried. *Id*. at 560 (citing *Hammer v. State*, 256 S.W.3d 391, 395-96 (Tex. App.—San Antonio 2008), *rev'd*, 296 S.W.3d 555 (Tex. Crim. App. 2009)). The court of criminal appeals reversed, concluding that the trial court erred by excluding the evidence because it provided strong support for the defendant's theory that his daughter was angry, motivated to falsely accuse him, and had shown herself capable of changing a story about a sexual encounter. *Id.* at 567.

The *Hammer* opinion does not control this case because of crucial factual distinctions. Where the excluded evidence in *Hammer* plainly showed the accuser's bias and anger toward her father and a willingness to change stories for strategic reasons, *see id.*, the victim's failure in this case to fully document in her outcry all sexual assaults against her does not show similar bias. It shows only that, when she first reported being sexually assaulted to her mother, she limited the scope of her disclosure to information concerning the person she said had been assaulting her for four years. The trial court did not abuse its discretion by concluding that appellant did not demonstrate how the excluded evidence would have shown the victim's bias against him.

10

Appellant did not show that excluding this topic deprived him of his right to confront a witness regarding her ill-feeling or bias against him, about her motive to report his abuse, or about the DNA evidence. Appellant confronted his daughter regarding potential bias arising from unauthorized spending or deprivation of extra-curricular activities. But there is no showing that confronting her about her failure to outcry about her brother's alleged assault would show anything about her attitude toward appellant. There is no evidence or indication that her brother was her assailant *instead* of appellant, only that he was possibly an *additional* assailant. Appellant also has not explained how evidence of her failure to report her brother's assault would bear on the DNA evidence in any way that would exculpate appellant. The only identified DNA on the condom was appellant's. The uncertainty regarding secondary contributors to the mixture inside the condom was inconclusive because, according to DPS's Becker, the similarity of their DNA to each other and to appellant made drawing definitive conclusions regarding who contributed the DNA difficult. The dispositive issue is the absence of any connection made between her failure to report her brother's alleged assault to any issue relevant to the allegations against appellant. We find no abuse of discretion or deprivation of the right to confrontation in the trial court's decision to prohibit appellant from interrogating his daughter about her failure to report her brother's alleged assault.

**Did the trial court err by refusing to instruct the jury on the lesser-included offense of indecency with a child?**

Appellant contends that the trial court erred by refusing his request for an instruction on indecency with a child, which he contends is a lesser-included offense of continuous sexual assault of a child. The State argues that we need not reverse because (1) the record does not support

11

giving the instruction, and (2) appellant was not harmed by any error in failing to give the instruction.

Determining whether a defendant is entitled to a lesser-included-offense instruction requires a two-part analysis. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011); *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007). As the court of criminal appeals explained:

> An offense is a lesser-included offense of another offense . . . if the indictment for the greater-inclusive offense either: 1) alleges all of the elements of the lesser-included offense or 2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced.

*Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011) (quoting *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009)); *see also* Tex. Code Crim. Proc. art. 37.09. If we determine that the offense contained in the requested instruction is a lesser-included offense of the charged offense, then we must decide whether the admitted evidence at trial supports the instruction. *Rice*, 333 S.W.3d at 144; *Hall*, 225 S.W.3d at 535. The trial court must instruct the jury on the lesser-included offense if some evidence exists in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994).

The State correctly concedes that indecency with a child is, for the most part, a lesser-included offense of continuous sexual abuse of a child. The offense of continuous sexual assault occurs when a person commits any of several enumerated penal code violations two or more times over thirty or more days. Tex. Penal Code § 21.02. Indecency with a child is listed as one of the offenses that can support a continuous-sexual abuse charge, but the statute expressly excludes

12

indecency by touching the child's breast as one of the constituent offenses. *See id.* § 21.02(c)(2). Accordingly, the trial court did not err by refusing to give a lesser-included instruction regarding indecency by touching the child's breast, and we must determine whether the record supported giving the instruction regarding indecency by contact with the child's anus or genitals. *See* Tex. Penal Code §§ 21.01(2) (defining sexual contact), .11(a) (defining indecency with a child by contact).

Appellant points to evidence of hand-genital contact from which the jury could have found him guilty of indecency with a child. The jury could have found him guilty only of indecency by contact if it believed one of his daughter's accusations but not the others. While the jury can selectively believe all or part of the testimony proffered and introduced by either side, *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998), that principle does not mandate giving a lesser-included offense instruction. As the court of criminal appeals has written, "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted." *Bignall*, 887 S.W.2d at 24. Because we find no evidence in the record that appellant, if guilty, is guilty only of indecency with a child by contact, we conclude that the trial court did not err by refusing to instruct the jury on the lesser-included offense of indecency with a child. *See id.*

## CONCLUSION

We affirm the judgment of conviction.

13

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed:   June 27, 2014

Do Not Publish

14