PD-0596-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/18/2015 12:00:00 AM
Accepted 5/19/2015 3:28:35 PM
ABEL ACOSTA
CLERK

# COURT OF CRIMINAL APPEALS

## PD-_____-15

# *Terrish Germaine Garmon, Appellant*
# *v.*
# *State of Texas, Appellee.*

**On Discretionary Review from
No. 05-13-00702-CR
Fifth Court of Appeals**

**On Appeal from No. F12-34332
Criminal District Court No. 3
Dallas County**

# Motion to Extend Time to File Petition for Discretionary Review

**Michael Mowla**
**445 E. FM 1382 No. 3-718**
**Cedar Hill, Texas 75104**
**Phone: 972-795-2401**
**Fax: 972-692-6636**
**michael@mowlalaw.com**
**Texas Bar No. 24048680**
**Attorney for Appellant**

FILED IN
COURT OF CRIMINAL APPEALS

May 19, 2015

ABEL ACOSTA, CLERK

**To the Honorable Judges of the Court of Criminal Appeals:**

Appellant Terrish Germaine Garmon moves for an extension of time of **30 days** to file a petition for discretionary review:

1.      On May 12, 2015, in *Garmon v. State*, 05-13-00702-CR (Tex. App. Dallas, May 12, 2015), the Court of Appeals affirmed Appellant's conviction. *See* attached.

2.      The petition for discretionary review is due on **June 11, 2015**.

3.      For good cause, Appellant asks for an extension of 30 days until **July 11, 2015** to file the petition for discretionary review.

4.      No previous extension to file the petition for discretionary review has been filed.

5.      Appellant relies on the following facts as good cause for the requested extension: undersigned counsel Michael Mowla just completed a brief in a large federal tax fraud case in *USA v. Perez*, 15-10026, which was filed in the Fifth Circuit on May 15, 2015.

6.      Further, Mowla has the following briefs, petitions for discretionary review, or other pleadings due soon:

- Motion and Brief under 28 U.S.C. § 2255 in *USA v. Boutte*, 4-12-CR-00249, to be filed in the Eastern District of Texas.

- Appellant's Brief due in *USA v. Wafer*, 15-10089, Fifth Circuit, due May 27, 2015.

- Petition for Rehearing En Banc in *USA v. Trevino*, 13-50849, Fifth Circuit, due June 4, 2015, 2015.

- Reply Brief in a proceeding 28 U.S.C. § 2254 in *Esparza v. Director*, 4-14-CV-00694, Eastern District of Texas, due June 19, 2015.

- Two applications for writs of habeas corpus under Article 11.072 and 11.09 expected to be filed in the next few weeks in Denton and Tarrant Counties.

7.     In addition, Mowla was recently appointed in a death penalty case under Article 11.071 in *Ex parte Kenneth Thomas*, F86-85539.

8.     Mowla also continues to work on a federal habeas corpus death penalty case, *Jones v. Stephens*, 4:05-CV-638, Northern District of Texas.

9.     Finally, Mowla also continues to work on several habeas cases involving the underlying issue in *Miller v. Alabama*, 132 S.Ct. 2455 (2012).

10.     This Motion is not filed for purposes of delay, but so that justice may be served.

### Prayer

Appellant prays that this Court grant this motion for an extension of time to file a petition for discretionary review.

Respectfully submitted,

Michael Mowla
445 E. FM 1382 No. 3-718
Cedar Hill, Texas 75104
Phone: 972-795-2401
Fax: 972-692-6636
michael@mowlalaw.com
Texas Bar No. 24048680
Attorney for Appellant

**/s/ Michael Mowla**
By: Michael Mowla

## Certificate of Service

I certify that on May 16, 2015, a true and correct copy of this document was served by email on the District Attorney's Office, Dallas County, Appellate Division to Lori Ordiway at lori.ordiway@dallascounty.org, Lisa Smith at lisa.smith@dallascounty.org, and on Rebecca Ott at rebecca.ott@dallascounty.org; and by email on the State Prosecuting Attorney to Lisa McMinn at Lisa.McMinn@spa.texas.gov, and John Messinger at john.messinger@spa.state.tx.us. *See* Tex. Rule App. Proc. 9.5 (2015) and 68.11 (2015).

**/s/ Michael Mowla**
By: Michael Mowla



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00702-CR

**TERRISH JERMAINE GARMON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F-1234332-J**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Brown, and Schenck[1]
Opinion by Justice Brown

Terrish Jermaine Garmon appeals his conviction for burglary of a habitation in Irving, Texas, owned by Jude Garcia. A jury found appellant guilty and assessed his punishment at fifteen years' confinement and a $10,000 fine. In two issues on appeal, appellant contends the trial court abused its discretion in admitting evidence of four extraneous offenses and contends the evidence is insufficient to prove he committed the charged offense. For reasons that follow, we affirm the trial court's judgment.

### BACKGROUND

Appellant was indicted for burglary of Garcia's habitation under two alternative theories. The indictment alleged he intentionally and knowingly entered the habitation without Garcia's

---

[1] Justice David Schenck succeeded Justice Michael O'Neill, a member of the original panel, following Justice O'Neill's retirement. Justice Schenck has reviewed the briefs and the record before the Court. *See* TEX. R. APP. P. 41.1(a).

effective consent, with the intent to commit theft. It also alleged appellant intentionally and knowingly entered the habitation without Garcia's effective consent and committed and attempted to commit theft. *See* TEX. PENAL CODE ANN. § 30.02(a) (West 2011). Appellant entered a plea of not guilty.

Before voir dire, the State asked the trial court to allow it to present evidence of unadjudicated extraneous offenses under the theories of doctrine of chances and modus operandi. The prosecutor described three unadjudicated offenses committed in a manner similar to the charged burglary and asserted those offenses were admissible to prove appellant committed the instant offense. The trial court made a preliminary ruling that the evidence was relevant and that its probative value outweighed its prejudicial effect, subject to the State proving up the allegations. After jury selection, the trial court held a hearing outside the presence of the jury at which the State put on evidence of the unadjudicated extraneous offenses — two burglaries in Grand Prairie and Fort Worth and one attempted burglary in Coppell.[2] The State also presented evidence of appellant's 2005 conviction for unauthorized use of a motor vehicle that it wished to introduce at guilt/innocence. Appellant objected to the evidence under rules of evidence 404(b) and 403. The court reaffirmed its earlier ruling allowing the evidence of the unadjudicated offenses and also ruled it would allow evidence of the prior conviction.

**The Irving Burglary/Charged Offense**

At trial, Jude Garcia testified that in 2012, he owned a motorcycle, described as a "supersport" bike, that he wanted to sell. Garcia posted an ad on Craigslist with a description and pictures of the bike. The ad included Garcia's cell phone number, but not his address. Only one person called Garcia in response to the ad, and that man wanted to come look at the bike. Garcia gave the man his address in Irving, but he did not show up or call to cancel. The next

---

[2] At this pretrial hearing, there was also evidence of a similar incident in Garland, but the State never presented this offense to the jury.

–2–

morning, May 26, 2012, Garcia called the man back to ask if he was still interested. The man said he was no longer interested and "kind of laugh[ed]" at Garcia and hung up. When Garcia left his house later, he noticed two holes in his garage doors. When he opened the garage, his bike was gone. The holes were cut near an emergency latch. Someone could reach in through the hole, pull the emergency latch, and roll the door up. Garcia called the police.

Garcia's wife, Patricia Garcia, testified that after the police left and without their knowledge, she decided it would be a good idea to contact the man who had called about the motorcycle. The mobile number for the person she contacted was (972) 800-4920. Using her cell phone, Patricia Garcia texted his phone number, pretending she had met him before and was interested in him. She also spoke with the person over the phone. Patricia asked if he had a motorcycle, and he said he did. He identified himself to her as "Terry." He also texted Patricia a picture of himself. Patricia identified appellant in court as the person in the photograph, and the photo was admitted into evidence. Appellant and Patricia texted back and forth for about a week.

While Patricia Garcia was on the stand, the State introduced into evidence State's Exhibit No. 5. The documents contained in that exhibit were provided by T-Mobile in response to a subpoena duces tecum asking for phone records for (972) 800-4920, the number of the person who called to inquire about Garcia's motorcycle. T-Mobile's records show that number belonged to a "Terrytish J. Garmon." The exhibit also included a list of calls and texts made to and from (972) 800-4920 in May and June 2012. Exhibit No. 5 shows two calls from appellant's cell phone to Jude Garcia's phone on May 25, 2012. The records also showed Patricia and appellant had exchanged phone calls and text messages.

Irving Police Officer Philip Pearson responded to Jude Garcia's call to police about the missing motorcycle. He testified that the holes in Garcia's garage doors were in the upper

panels, about six inches from the ceiling. Pearson stated you could reach in through the holes to pull an emergency release rope to allow you to open the garage door. It was like someone used a power saw to cut a circle out of the door. Pearson did not find any fingerprints on the doors. Pearson had never seen holes cut in a garage in that part of town and had not seen that method used for stealing a motorcycle. Garcia gave Pearson the phone number of the person who had contacted him about the Craigslist posting.

Detective Rocky Bailey was assigned to follow up on the case. He testified that he ran the cell phone number Garcia provided through a computer program. The number came back to a Terrish Garmon. Bailey also had the photograph that had been texted to Patricia Garcia. Bailey searched the name Terrish Garmon on Facebook and found a Facebook page in that name that included the same photograph. Next Bailey found an address for Terrish Garmon. Bailey had been investigating vehicle thefts since 1998 and had not seen holes cut in a garage before. He testified it was "very unique." Because of the unique cutting of the holes in Garcia's garage, Bailey shared information about the burglary with other law enforcement agencies in the area.

Detective Bailey obtained a search warrant for appellant's residence. He did not find the motorcycle or any stolen motorcycle parts. Bailey did find a piece of cardboard on which about thirty motorcycle descriptions were written, along with phone numbers and cities. Bailey said it was likely this information was from Craigslist ads. Bailey began to call the phone numbers listed. When Bailey called a Mark Menkiena in Grand Prairie, Menkiena told Bailey his motorcycle had been stolen.

**Unadjudicated Extraneous Offenses**

Coppell Police Detective Steve Hayes testified that in March 2012, he investigated an attempted burglary of a habitation in Coppell owned by Jonathan Mohr. Mohr's garage door had a hole cut in it. This attempted entry method was very unusual, and Hayes hadn't seen it before.

–4–

Mohr had placed a motorcycle for sale on Craigslist. Detective Hayes had the phone number of a person who had called Mohr about the motorcycle. The number was (469) 360-1379. During Hayes's testimony, State's Exhibit No. 13 was admitted into evidence. The exhibit contained phone records for the number (469) 360-1379. Hayes testified the name associated with that mobile number was Terrish Garmon. Mohr's motorcycle was not taken. Mohr's dog started barking, and Mohr came outside.

Detective Hayes shared information about this crime with other agencies and also gathered information from other agencies. He received information about a similar case out of Fort Worth. In that case, the complainant placed a motorcycle for sale on Craigslist. There was a hole in the garage door, and the motorcycle was taken. The same mobile number used in the Coppell case was used in the Fort Worth case. Hayes also had information about a similar case in Grand Prairie. Again, there was a hole in the garage door and a missing motorcycle. The phone number used was again the 469 phone number that records indicated belonged to Terrish Garmon. Hayes looked into Terrish Garmon and learned about a 2004 Richardson offense involving a motorcycle that had been taken from a garage after holes were cut into the garage door. Appellant was found on the stolen motorcycle.

Jonathan Mohr of Coppell testified that someone attempted to steal his motorcycle on March 18, 2012. Mohr put an ad for his motorcycle on Craigslist. A man called him on March 17th and asked if he could come by and look at it. Mohr had received a few calls about the motorcycle, but only gave his address to this one person. Mohr set up a meeting with that person for late afternoon on March 17, but the man called back and said he was not going to be able to make it. Although they discussed getting together another day, the man never called back to reschedule or follow up. At about 3:30 a.m. that night, Mohr heard his dog barking and got up to check the inside of the house. The next morning, Mohr found a hole in his garage door. His

motorcycle was still in the garage. Phone records indicated that the man called him from the number (469) 360-1379. Looking at State's Exhibit No. 13, the phone records associated with that number, Mohr testified they showed he exchanged phone calls and text messages with that number.

Bruce Carr testified that his son listed a motorcycle for sale on Craigslist. In early April 2012, the motorcycle was stolen from Carr's home in Fort Worth. The day before the bike was stolen, Carr got a call from someone who identified himself as Terry and wanted to come take a look at the bike. Carr gave the man his address, and the man said he would be over that day. Neither Carr nor his son had given the address out to anyone else regarding the bike. The man called back to cancel. The next morning, when Carr was backing his car out of the garage, he noticed three holes in the garage doors and realized the motorcycle was missing. When Carr did a reverse search on the phone number of the man he spoke to about the bike, it was connected to a Terrish J. Garmon.

Mark Menkiena testified that in 2012 he owned a motorcycle or sportbike and, because he lived in an apartment, kept it in the garage of a friend's home in Grand Prairie. In April 2012, he decided to sell the motorcycle and put it up for sale on Craigslist. Two men called him about it. Menkiena provided his friend's address to one of them and went there to wait, but the man did not show up and called to say he wasn't going to make it. The next morning, Menkiena's friend called to ask if Menkiena had picked the motorcycle up from his house because it was gone. There were no holes in the garage door or other signs of forced entry. Menkiena's friend told him he left a door into the garage unlocked. Menkiena provided police with the phone number of the man who had called him. Menkiena testified that his phone number and a description of his bike were among those listed on the paper found by Detective Bailey at appellant's house.

**Appellant's Prior UUMV Conviction**

Dustin Mantell testified that in April 2004, a sportbike he owned was stolen from his mother's garage overnight. A triangular hole was cut in the garage and used to access a manual release. Mantell had not put the motorcycle up for sale. The police later called Mantell to tell him his motorcycle had been recovered. It had been in a wreck and was in poor condition. Mantell's mother's name, Carol Conway, was on the title to the motorcycle because she had cosigned for it.

Dallas Sheriff's Deputy Willie Washington testified that he took appellant's fingerprints that morning. He compared the prints with those in State's Exhibit No. 23, a certified copy of a judgment, and testified that they were the same. Washington testified the judgment showed that appellant, Terrish Jermaine Garmon, was convicted of unauthorized use of a motor vehicle in October 2005. The date of the offense was April 27, 2004, and the complainant was Carol Conway.

Appellant rested without presenting any evidence.

The court's charge on guilt/innocence instructed the jury that it could not consider any testimony regarding appellant having committed offenses other than the charged offense unless it found beyond a reasonable doubt that appellant committed such other offenses. The charge further instructed that, even then, the jury was only to consider such evidence in determining motive, intent, scheme, design, or identity. The jury found appellant guilty and assessed his punishment at fifteen years' confinement and a $10,000 fine. This appeal followed.

## ADMISSION OF EXTRANEOUS OFFENSE EVIDENCE

In his first issue, appellant contends the trial court abused its discretion in allowing the State to present evidence of the extraneous burglaries or attempted burglaries and evidence of the 2005 conviction. Appellant contends the trial court abused its discretion in allowing the

–7–

evidence because: 1) the State failed to prove beyond a reasonable doubt he committed the unadjudicated extraneous offenses; 2) the extraneous offenses did not meet the criteria for admissibility under rule of evidence 404(b); and 3) the probative value of these extraneous offenses was substantially outweighed by the danger of unfair prejudice.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show he acted in conformity therewith. TEX. R. EVID. 404(b). It may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* Whether extraneous offense evidence has relevance apart from character conformity is a question for the trial court. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Thus, a trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse of discretion standard. *Id.* As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion. *Id.* at 343–44. Further, a trial court cannot admit extraneous offense evidence unless a jury could find beyond a reasonable doubt that the defendant committed the extraneous offense. *Fischer v. State*, 268 S.W.3d 552, 558 (Tex. Crim. App. 2008).

One of the main rationales for admitting extraneous offense evidence is to prove the identity of the offender. *Segundo v. State*, 270 S.W.3d 79, 88 (Tex. Crim. App. 2008). Here, the theory of relevancy is usually that of modus operandi in which the pattern and characteristics of the charged crime and uncharged misconduct are so distinctively similar that they constitute a "signature." *Id.* No rigid rules dictate what constitutes sufficient similarities. Common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress or any other elements which mark both crimes as having been committed by the same person. *Id.* The "doctrine of chances" may also come into play when using extraneous offenses to prove identity. That doctrine tells us that highly unusual events are unlikely to repeat

themselves inadvertently or by happenstance. *Carrizales v. State*, 414 S.W.3d 737, 745 (Tex. Crim. App. 2013). For the doctrine to apply, there must be a similarity between the charged and extraneous offenses, since it is the improbability of a like result being repeated by mere chance that gives the extraneous offense its probative weight. *Brown v. State*, 96 S.W.3d 508, 512 (Tex. App.—Austin 2002, no pet.).

Relevant evidence may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Martinez v. State*, 327 S.W.3d 727, 737 (Tex. Crim. App. 2010). Unfair prejudice refers not to an adverse or detrimental effect of evidence but to an undue tendency to suggest a decision on an improper basis. *Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007). When undertaking a rule 403 analysis, the trial court must balance 1) the inherent probative force of the proffered evidence along with 2) the proponent's need for that evidence against 3) any tendency of the evidence to suggest decision on an improper basis, 4) any tendency of the evidence to confuse or distract the jury from the main issues, 5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and 6) the likelihood that presentation of the evidence will consume an inordinate amount of time or be repetitive. *Id.*; *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). As with rule 404(b), we review a trial court's decision to admit evidence in the face of a 403 objection under an abuse of discretion standard, and the court does not abuse its discretion as long as its decision is within the zone of reasonable disagreement. *De La Paz*, 729 S.W.3d at 343–44.

We address appellant's first two complaints about the unadjudicated extraneous offense evidence together. First, appellant asserts the trial court abused its discretion in admitting this evidence because the State did not prove beyond a reasonable doubt that he committed these offenses. Similarly, appellant also maintains the unadjudicated extraneous offenses were inadmissible under 404(b) to show his identity because he was not sufficiently tied to those offenses. Appellant maintains that without any evidence he was at the location of the burglaries or attempted burglaries, or evidence that he was in possession of burglary tools or the stolen motorcycles, it was not established that he committed the offenses. We disagree.

The charged burglary was committed in May 2012. The extraneous burglaries and attempted burglary were committed near that time, in March and April of 2012. Like the charged offense, the stolen item in the two other burglary cases was a motorcycle. In the attempted burglary case, someone made efforts to get into a garage where a motorcycle was stored. In all three extraneous offenses, like the instant offense, the motorcycle owner had placed the bike for sale on Craigslist. In all three cases, the bike owner had given the address where the motorcycle was located out to only one person. Each time, that person said he was coming over to see the motorcycle, but did not show up. And each time, the motorcycle was stolen, or an attempt was made to steal it, that night. In the Grand Prairie, Fort Worth, and Coppell cases, the person who called to set up a time to come to see the motorcycle used phone number (469) 360-1379. That phone number belonged to a Terrish Garmon. Although a different phone number was used in the Irving burglary, that number was also linked to Terrish Garmon. In the Coppell attempted burglary and the Fort Worth burglary, someone cut holes in the garage as a means of opening the garage door. That same method was used to gain entry to Garcia's garage in the charged offense. Both Detective Hayes and Detective Bailey testified that this was a very unique method of committing burglary. Although no holes were cut into the

–10–

garage in the Grand Prairie case and there were no other signs of forced entry, there was evidence the homeowner had left a door into the garage unlocked.

The characteristics of the charged offense and the uncharged offenses are so distinctively similar that they constitute appellant's signature or modus operandi. Appellant asserts that no evidence ties him to the crimes. Yet his cell phone number was used to contact the owners of the motorcycles, and in each case, he was the only person to whom the bike owner gave the location of the bike. That appellant would be the only person to get the address of a motorcycle and for that motorcycle to disappear that same night in a similar way each time is such a highly unusual event it is unlikely to happen by coincidence. We conclude a jury could have found beyond a reasonable doubt that appellant committed the three unadjudicated offenses. Likewise, the trial court did not abuse its discretion in determining that the uncharged offenses were admissible under rule 404(b) to show identity.

Appellant also asserts the 2005 conviction was not admissible at guilt/innocence under rule 404(b) because it was not a burglary conviction and it was too remote. In his brief, appellant refers to the 2005 conviction as one for the offense of evading arrest. Appellant was convicted of two offenses stemming from his use of David Mantell's motorcycle, unauthorized use of a motor vehicle and evading arrest. At the hearing outside the jury's presence on the admissibility of extraneous offenses, the court ruled that it would allow evidence of the UUMV conviction, but would not allow the State to discuss the evading arrest. The State did not introduce evidence of the evading arrest conviction until the punishment phase. Because appellant's evading arrest conviction was not in evidence during the guilt/innocence phase of trial, his argument about it lacks merit. Further, assuming appellant meant to complain about the unauthorized use of a motor vehicle conviction, his brief does not mention UUMV at all, and thus he has not properly briefed this argument. *See* TEX. R. APP. P. 38.1.

–11–

Even if we construe appellant's brief liberally to include a complaint regarding the admission of the unauthorized use of a motor vehicle conviction, there was no error. We are not persuaded the prior conviction should have been excluded under rule 404(b) merely because the offense was unauthorized use of a motor vehicle instead of burglary. The circumstances under which appellant came to be in possession of the motor vehicle, a motorcycle, are similar to the charged offense. Mantell's sportbike was stolen from his mother's garage overnight. A hole was cut in the garage to access a manual release. Appellant was found riding the stolen motorcycle.

Regarding remoteness of the conviction, rule 404(b) contains no restrictions on how recent an extraneous offense must be to be admissible. TEX. R. EVID. 404(b); *cf.* TEX. R. EVID. 609 (for purpose of attacking credibility of witness, evidence of prior conviction is generally inadmissible if more than ten years have elapsed from date of conviction). Remoteness is an element of an offense's probative value under rule 403. *Gaytan v. State*, 331 S.W.3d 218, 226–27 (Tex. App.—Austin 2011, pet ref'd). Remoteness alone is not a reason for the exclusion of extraneous offense evidence. *Id.* But it can significantly lessen the probative value of such evidence because the passage of time allows people to change. *Id.* at 226. Thus, we will consider appellant's argument about remoteness in our discussion below of his complaint that all extraneous offenses should have been excluded under rule 403.

Appellant's final complaint about the extraneous offense evidence is that the trial court abused its discretion in allowing that evidence, both the uncharged offenses and the prior conviction, because its probative value was substantially outweighed by its prejudicial effect. Appellant asserts the evidence had great potential to impress the jury in an "irrational yet indelible way," and also complains the State spent a considerable amount of time developing this evidence when it was not necessary to the State's case.

–12–

The uncharged offenses were highly important to the State's case to show appellant's identity as the person who committed the burglary of Garcia's habitation. They showed that the way in which the instant offense was committed was appellant's signature. Viewed in isolation, the fact that Garcia's motorcycle was stolen the night appellant called about it could be seen as mere coincidence. But evidence that three other homes with motorcycles for sale had recently been broken into the same night appellant called about the motorcycles, suggested it was not mere chance.

Regarding the prior conviction, it was for the offense of unauthorized use of a motorcycle committed eight years before the charged offense. The remoteness of the conviction weighs against its probative value. But other factors favor its admissibility, including the similarities between that offense and the charged crime, and the fact that it was the only evidence that directly connected appellant to a motorcycle that had been stolen using a method similar to that used in the instant case.

In addition, the potential for any unfair prejudice or confusion of the issues based on the admission of this evidence, as well as the uncharged offenses, was slight. Further, the court instructed the jury that it was only to consider the extraneous offenses if it found beyond a reasonable doubt appellant committed them and, even then, to only consider it to determine motive, intent, scheme, design, or identity. Including voir dire and the punishment phase, this trial lasted only three days. We cannot say that the State devoted an inordinate amount of time to presentation of the extraneous offenses. We cannot conclude it was an abuse of discretion for the trial court to determine that the probative value of the extraneous offenses was not substantially outweighed by their prejudicial effect and overrule appellant's 403 objections. We overrule appellant's first issue.

In his second issue, appellant contends the evidence is insufficient to prove he committed burglary of a habitation. Again he argues that there is nothing to place him at or near Garcia's house or no evidence that he was in possession of items stolen from the house or of burglary tools.

When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). Each fact need not point directly and independently to the guilt of the defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* Further, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Temple*, 390 S.W.3d at 360.

After reviewing the record in the light most favorable to the verdict, we conclude the circumstantial evidence presented at trial was sufficient to show appellant's identity as the person who entered Garcia's habitation and committed the theft of his motorcycle. As previously discussed, the evidence showed appellant called Garcia to inquire about buying his motorcycle, which had been listed for sale on Craigslist. Appellant was the only person who called Garcia about the bike and the only person to whom Garcia gave his address. Appellant said he was going to come see the bike, but did not show up. The motorcycle was stolen that night. Holes were cut in Garcia's garage to gain access to an emergency latch. Police detectives

–14–

testified this was a very unusual way to commit burglary. After the motorcycle had been stolen, but before Garcia knew about the theft, Garcia called appellant, and appellant said he was no longer interested in the bike and kind of laughed at Garcia. The State presented evidence that in three other recent instances, after a motorcycle owner had advertised the bike on Craigslist, appellant had called to get the location of the bike and set up a time to view it, but then cancelled. Each time, that same night, the owner's garage was broken into. In two of these three cases, the garage doors were cut in the same way Garcia's had been. In the third case, a garage door had been left unlocked. Also, eight years earlier, appellant was found using a sportbike that was stolen from a garage that had holes cut into it. Under the doctrine of chances, it is highly unlikely that it was just a matter of coincidence that Garcia's habitation and the others would have been burglarized using the same method of entry the very night appellant called to inquire about the motorcycle for sale and get the address. The combined and cumulative force of all the incriminating circumstances is sufficient to support this burglary conviction. We overrule appellant's second issue.

We affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.

130702F.U05

–15–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

TERRISH JERMAINE GARMON,
Appellant

No. 05-13-00702-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 3, Dallas County, Texas
Trial Court Cause No. F-1234332-J.
Opinion delivered by Justice Brown. Justices
Lang-Miers and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 12th day of May, 2015.