

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-23-00168-CR

———————————————————

PETER HUNG NGUYEN, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1733813

Before Sudderth, C.J.; Birdwell and Wallach, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

Appellant Peter Hung Nguyen challenges his conviction for sexual assault of a child and indecency with a child. In one issue, he argues that the trial court abused its discretion by admitting extraneous offense evidence because the evidence's admission was not authorized by Texas Code of Criminal Procedure Article 38.37 and was more prejudicial than probative. Because the trial court did not abuse its discretion, we will affirm.

**Background**

## I. The Charged Offenses

The complainant in this case was M.P. (May).[1] At trial, May testified that she met Nguyen on a social media app when she was around fourteen and then met him in person. They continued to keep in touch by meeting in person and by calls through Discord. When May was in 9th grade, Nguyen came to her house four times. When he visited during the daytime, there were no adults in the house, and May let him in through the front door. When he came over at night, however, he entered the house through May's bedroom window. On one of those occasions, May's grandfather caught him trying to get into the house and chased him away. In August 2020,

---

[1]We use pseudonyms when referring to people discussed in this opinion who were minors during their encounters with Nguyen. *See* Tex. R. App. P. 9.10(a)(3). To further protect these minors' identity, we also use pseudonyms when referring to the minors' adult family members. *See* Tex. Const. art. I, § 30(a)(1); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

however, Nguyen was able to enter the house without being caught, and May testified that on that occasion, Nguyen touched her breast and put his fingers and then his penis in her vagina.

Nguyen came to the house on another date in April 2021 while May was dogsitting. Nguyen kissed May, touched her breast, and removed his pants. However, the dog was blocking May's body, and while Nguyen was trying to move the dog, May's grandmother (Grandmother) arrived home. Grandmother knocked on May's door, but the door was locked, and May did not open right away. May finally opened the door after about ten minutes, and Grandmother found Nguyen hiding in May's closet. Grandmother yelled at Nguyen and hit him, but he pushed Grandmother and ran away, and May ran out after him. However, Grandmother took a picture of Nguyen's license plate before they drove away. Grandmother then called May's mother, who called 911; the person May's mother spoke with said to report May as missing because she was underage.

May returned home about ten minutes later, and she admitted to her mother that she had had sex with Nguyen. Mother later reported this fact to the police when they followed up on her report.

Arlington Police Detective Mary Almy investigated the case after it was assigned to her in January 2022.[2] She spoke with May's mother and then arranged for

[2]After May's mother's phone report, May had been entered into the police department's system as a runaway, but a clerical error had led to the runaway report's

3

May to be interviewed by a forensic interviewer at a child advocacy center. Based on that interview, May underwent a medical exam by a sexual assault nurse examiner at John Peter Smith Hospital.

Almy also interviewed Nguyen, and during that interview, Nguyen nodded in response to the detective asking him, "So, prior to April of last year, y'all had sex more than one time, right?" Further, when Almy asked him, "Ok, so, [on the date he had been found by Grandmother], Grandma came in, that was a year ago, so how many months was it before that [date] that [you] had sex with her," Nguyen responded that it had been less than six months. The video of that interview was played for the jury.

The State indicted Nguyen on two counts of sexual assault and three counts of indecency with a child. On the second day of trial, the State amended the indictment to drop one of the indecency counts and renumber the remaining counts. Thus, the trial court submitted to the jury two counts of sexual assault (counts I and II) and two counts of indecency with a child by contact (counts III and IV). The jury found Nguyen guilty on one count of sexual assault of a child (count I) and one count of indecency by contact (count III) and acquitted him of the other two charges. The jury assessed punishment of seventeen years' confinement in the Institutional Division of

---

not being properly entered into the police department's system. In January 2022, Almy received an email that May had been located, but when she pulled up the report, she saw that "it wasn't a runaway report. It was an assault report."

4

the Texas Department of Criminal Justice for count I and seven years' confinement for count III. The trial court sentenced Nguyen in accordance with the jury's verdict and ordered his sentences to run concurrently.

## II. The Extraneous Offense Evidence

Nguyen's issue on appeal focuses on evidence admitted at trial of a prior offense against a minor. After the State advised the trial court that it intended to call the minor's mother, M.Z. (Minh), and a police officer to provide evidence under Code of Criminal Procedure Article 38.37, Section 2, the trial court held a hearing outside the jury's presence. *See* Tex. Code Crim. Proc. art. 38.37. For purposes of the hearing, Minh testified about a time when she had found Nguyen in the bedroom of her pre-teen daughter N.S. (Nga). The police officer who had responded to a 911 call made by Nga's mother testified about the officer's interactions with Nguyen in response to that call.

According to Minh, on June 13, 2020, at about 2:00 a.m., she heard a loud noise from upstairs, so she went up to Nga's upstairs bedroom. When she opened the door, she saw Nguyen on top of Nga simulating sex. Nga was twelve at the time. Minh described to the jury what she saw:

> Q. . . . Now, you said that you saw a guy on top of your daughter on the bed?
>
> A. (Nods head up and down.)
>
> Q. What were they doing?

5

A. *Sexing.*[3]

. . . .

Q. Do you think they were *engaged in sex*?

A. *Yes,* but they still had clothes on. And I got—I went one time—if I wait a little bit, I don't know what can happen.

Q. And I'm sorry. I know this is hard, but when you said that they were—they had their clothes on but it looked like they were having sex, were they touching each other?

A. *Yes. He's between my daughter's leg. . . .* He's between in my daughter's leg, and my daughter leg was open, and he's between—like, he's *top on her.*

Q. (BY [Prosecutor]) So you said that he was on top of her and he was between your daughter's legs, like, your daughter's legs were open?

A. Yes.

Q. Okay. And were their bodies touching each other?

A. (Nods head up and down.)

Q. Once you saw that—

A. He's like—his body was moving back and forth. [Emphasis added.]

Minh testified that she screamed, called for her husband, and separated her daughter and Nguyen. She also called the police, who responded and picked up Nguyen. On cross-examination, she again stated that Nguyen and her daughter had

[3]Minh's phrasing throughout her testimony suggests that English is not her first language.

their clothes on during the incident: "He—*they sexing*, only the clothes stay on. *He's back and forth, like, doing the sex to my daughter.* I saw it with my eyes." [Emphasis added.]

The trial court then followed up with more clarifying questions:

> THE COURT: On his question, to be clear, you said their clothes were on. Were their clothes completely on?
>
> THE WITNESS: Yes.
>
> THE COURT: So pants were buckled, no skin was exposed. Was clothes covering all of their skin?
>
> THE WITNESS: Yes. They both clothes stay on.
>
> THE COURT: All clothes on, including on their genital area.
>
> THE WITNESS: Yes.
>
> THE COURT: And their crotch area.
>
> THE WITNESS: Yes.
>
> THE COURT: So what you're saying, you saw them *pushing and rubbing against each other*, but there was no skin-to-skin contact. Is that what you're saying?
>
> THE WITNESS: *Yes.* [Emphasis added.]

The State also called Fort Worth Police Officer Dallas Goldring, who had responded to Minh's 911 call. Goldring testified that Nguyen originally said his name was Stephen Nguyen and provided a 2007 birth date, which would have made Nguyen thirteen years old. Based on the age given by Nguyen, Goldring had him call his mother, but after speaking with the woman whom Nguyen had called, Goldring

7

determined that the woman was not Nguyen's mother.[4] Goldring eventually learned Nguyen's actual first name and that Nguyen was twenty-one. Goldring also stated that although the other officer on the scene may have spoken to Minh, she "mostly spoke with [Nguyen]" and did not remember speaking to Minh or Nga, and she "never learned that there was anything other than kissing that happened." Goldring stated that Nguyen was arrested for failing to identify himself.[5]

After the testimony of those two witnesses, Nguyen objected that "[a]s far as the 38.37, the testimony is only that there was kissing. . . . It doesn't fit into indecency fondling" and that "if the girl is not going to testify, . . . it's more prejudicial than probative to allow this to come in, and it's certainly highly prejudicial to him when she's not here." After hearing the parties' arguments, the trial court ruled,

> Based on the motions of the 12-year-old child's mom, based upon the sexing, based on her movements, based upon legs spread, moving up and down, what I would say is thrusting-type motions, if I were to describe what is said from the Court's interpretation of evidence, on the indecency issue, contact the genitals by any means with intent to arouse or gratify, over, under clothing, I think there is evidence thereby which that could have been done, and the fact that a police department did or didn't see it that way, it's the issue does the jury see it or not see it that way.

---

[4]In her testimony before the jury, Goldring said that the woman admitted to being Nguyen's ex-girlfriend.

[5]During Goldring's testimony after the jury trial resumed, she stated that the other officer at the scene reported the incident to a detective in the crimes against children unit, and Goldring had no more involvement in the case after that.

The jury—based on the nature of this particular charge, too, it's not offered out of context; there's multiple counts of the same contact. The information and offense has been discussed thoroughly by two good sets of lawyers during the jury selection process of the understanding. So I find that, for statutory purposes, the conduct would be legally sufficient to sustain a charge of indecency with a child.

The trial court then ruled that the evidence could be admitted as evidence of Nguyen's character and of "whether acts are performed in conformity with said character at the time and place of the offenses on trial."

After the jury trial resumed, Minh and Goldring both testified. During Goldring's testimony, the State published the body camera video from Goldring's encounter with Nguyen. After the testimony, the State rested. The defense rested without presenting evidence.

## Discussion

In Nguyen's sole issue, he argues that the trial court erred by admitting the evidence about the incident with Nga under Article 38.37. He additionally argues that the evidence should have been excluded under Rule of Evidence 403.

### I. Standard of Review

We review the trial court's decision to admit or deny evidence for abuse of discretion. *Perkins v. State*, 664 S.W.3d 209, 217 (Tex. Crim. App. 2022); *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). "The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement." *Martinez*, 327 S.W.3d at 736.

9

## II. Article 38.37 Admissibility

If a defendant is prosecuted for indecency with a child or sexual assault of a child, then under Article 38.37, the trial court may admit evidence that the defendant has committed a separate offense of indecency with a child or sexual assault of a child. Tex. Code Crim. Proc. Ann. art. 38.37 § 2(a), (b). That evidence may be admitted notwithstanding Texas Rules of Evidence 404 and 405 and may be admitted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Id.* art. 38.37 § 2(b). However, before the evidence may be introduced, the trial court must conduct a hearing outside the jury's presence and, based on that hearing, "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." *Id.* art. 38.37 § 2-a. Further, the evidence may be excluded under Texas Rule of Evidence 403 if, after a balancing test, the trial court determines that the evidence's probativeness is outweighed by one of the dangers listed in the rule. Tex. R. Evid. 403; *see Trotti v. State*, No. 14-21-00536-CR, 2023 WL 5208815, at *6 (Tex. App.—Houston [14th Dist.] Aug. 15, 2023, pet. ref'd); *Castaneda v. State*, No. 14-22-00206-CR, 2023 WL 3743316, at *7 (Tex. App.—Houston [14th Dist.] June 1, 2023, pet. ref'd).

In this case, the separate offense presented was indecency with a child by contact. For purposes of the indecency-with-a-child statute, "sexual contact" may

occur if the person, acting with the intent to arouse or gratify the person's sexual desire, (1) touches a child's breast, anus, or any part of the child's genitals or (2) touches any part of a child with the person's breast, anus, or genitals. Tex. Penal Code Ann. § 21.11(c). Touching includes touching through clothing. *Id.* Nguyen argues that "the trial court failed to identify exactly what the indecent act was[,] only describing it generally" and that "[t]he evidence was simply to[o] vague and unspecific" to support the trial court's conclusion that "there is evidence thereby which [the indecency offense] could have been done."

We disagree with Nguyen that the evidence adduced at the hearing did not support the trial court's ruling. First, the trial court did not have to find that the hearing evidence established the extraneous offense beyond a reasonable doubt; rather, the trial court was required to determine based on what had been presented at the hearing that the evidence *likely to be admitted at trial* would be adequate to support such a finding by the jury. Tex. Code Crim. Proc. Ann. art. 38.37 § 2-a. Second, because a factfinder is permitted to make reasonable inferences from testimony, Minh did not have to specifically state that Nguyen's genitals were touching Nga or that Nguyen was touching Nga's breast, genitals, or anus if the evidence was sufficient to allow the jury to make a reasonable inference that such contact had occurred. *See Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007). Minh's and Goldring's testimony were sufficient to support such an inference.

11

Minh testified that she found Nguyen on top of her daughter on her daughter's bed. Nguyen's body was between her daughter's open legs. Minh described what she saw as Nguyen's body "pushing and rubbing" against Nga, "moving back and forth" between Nga's legs, "engaged in sex" though with clothes on. As the trial court pointed out, even though they were fully clothed, Nguyen committed an offense against Nga if, with the requisite intent, his genitals touched any part of Nga or any part of him touched any part of Nga's genitals. *See* Tex. Penal Code Ann. § 21.11(c). Additionally, Goldring testified that when speaking to her, Nguyen lied about his name and his age and then pretended to call his mother but called someone else instead, and a factfinder could consider Nguyen's lies as consciousness of guilt. *See Padilla v. State*, 326 S.W.3d 195, 201 (Tex. Crim. App. 2010) ("A rational trier of fact could also consider such untruthful statements by appellant, in connection with the other circumstances of the case, as affirmative evidence of appellant's guilt."); *Perales v. State*, 622 S.W.3d 575, 582 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (stating that appellant's actions around the time of his planned meetup with a person he believed was underage showed consciousness of guilt); *cf. King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (stating that the appellant's false statements to the media "indicat[ed] consciousness of guilt and an attempt to cover up the crime").

Between Minh's description of what she witnessed and Goldring's testimony about Nguyen's behavior with her, the evidence presented at the hearing was sufficient for the trial court to find that the evidence likely to be admitted at trial

12

would be adequate to support a jury's finding beyond a reasonable doubt that Nguyen had committed the offense of indecency with a child by contact against Nga. *See* Tex. Code Crim. Proc. Ann. art. 38.37 § 2(a). We overrule this part of Nguyen's issue.

Nguyen further argues that the scenario presented by the extraneous offense evidence raised multiple possible offenses—touching the child's anus, touching the child's breast, and touching the child's genitals with the requisite mental state—and that because each act constitutes a different criminal offense, juror unanimity was required as to the commission of any one of these acts. Nguyen recognizes that this court has previously rejected a jury unanimity challenge to Article 38.37 allegations, *see Swegheimer v. State*, No. 02-17-00095-CR, 2018 WL 1528477, at *7 (Tex. App.—Fort Worth Mar. 29, 2018, pet. ref'd) (mem. op., not designated for publication), but he states that he has raised the issue to preserve it for discretionary review by the Court of Criminal Appeals. We decline to depart from the holding in *Swegheimer* on this issue, but we acknowledge that Nguyen has preserved the argument.

## III. Rule 403 Admissibility

Nguyen next argues that Minh's testimony should have been excluded under Rule 403. As we will explain, we disagree.

### A. Rule 403

Rule 403 provides that the trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or

13

needlessly presenting cumulative evidence." Tex. R. Evid. 403. In determining whether a trial court abused its discretion by admitting evidence over a Rule 403 objection, this court must "measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is made." *Perkins*, 664 S.W.3d at 217.

The Court of Criminal Appeals has explained what each of the key phrases in Rule 403 means for purposes of our analysis. The phrase "probative value" means "the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). "Unfair prejudice" means "a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* "Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence." *Id.* "Confusion of the issues" means "a tendency to confuse or distract the jury from the main issues in the case." *Id.* "Misleading the jury" "refers to a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds"—for example, scientific evidence that could mislead a jury "that is not properly equipped to judge the probative force of the evidence." *Id.* The phrases "undue delay" and "needless presentation of cumulative evidence" are "self-explanatory and concern the efficiency of the trial proceeding rather than the threat of an inaccurate decision." *Id.*

**B. Analysis**

With these explanations of Rule 403 in mind, we now apply the rule to the evidence in this case. To start, both offenses involved a sexual offense alleged to have been committed against a girl, in the girl's bedroom, without the adults who lived there knowing of Nguyen's presence in the home. Nguyen argues that the State had no need for the evidence because the prosecutor "was able to present [the complainant], her mother, her grandmother, the SANE, and the investigating detective." However, May's testimony was the only direct evidence of what actually happened during both alleged encounters with Nguyen. At trial, in an effort to arouse the jury's sympathy, Nguyen directly attacked May's credibility, questioning her general propensity for truthfulness and specifically suggesting that she had lied to Nguyen about her age. *See Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (discussing probativeness of extraneous offense testimony in he-said/she-said sexual offense cases). For example, during voir dire, Nguyen's attorney stated that it is "a little bit weird" for the law to make it illegal for a 20-year-old person to have sex with a sixteen-year-old child. He further stated that "there's just a lot of ways, would you agree, that you can deceive people a little bit as to how old you are," that boys' brains develop slower than girls' brains, and that he "kind of wonder[ed] when they do these age things [e.g., enact age-of-consent laws] if they wouldn't consider some of that."

15

On cross-examination, Nguyen prompted May to acknowledge that she had been on the Tinder app, even though Tinder requires users to be eighteen years old, meaning that she had misrepresented her age to join. On re-direct, she stated that she had joined Tinder when she was seventeen, but on re-cross examination, Nguyen elicited her admission that she had joined Tinder when she was fifteen or sixteen. Then, in questioning Almy, Nguyen attempted to get her to agree that if May had said something that turned out to be a lie, "then she's really not that believable."

In Nguyen's attorney's questioning of the SANE nurse who examined May two years after Nguyen's encounters with May, he suggested that May had been angry at Nguyen.[6] He then elicited the nurse's admission that she had no personal knowledge that what May told her about what Nguyen had done was true.

Then, in his closing argument, Nguyen argued that May "knew exactly what she was doing, but there's still no proof that anything actually happened," and that May "g[o]t up here and g[a]ve the sweet, innocent act and the crocodile tears." He explicitly called May a liar:

> [E]very time I had a question about something that would actually hurt her case or dispute what she says, it always became, I don't know, I don't remember. But, man, she remembered every detail that helped her, every detail.

---

[6]Nguyen asked the nurse, "Good way to get back at somebody if you said he sexually assaulted you. Would you agree?" The trial court sustained the State's objection to that question.

16

In fact, even at one point when the State came back and asked her about being on Tinder, she says, no, I wasn't, when she had just got done saying maybe 30 seconds before that to me that she was. And I said to her, you just lied. And she's like, well, yeah. That's who you're judging by. And according to—according to Detective Almy, hey, if you lie, then you shouldn't be believed at all. But I guess she kind of picks and choose[s] when she wants to lie and not to lie.

. . . .

When it comes down to it, what proof do they actually have? And there's none. There's no proof that any acts even happened, except for the word of [May]. That's it. And we know she lies, and we know she's lied about multiple things.

The State had a need for evidence to counteract Nguyen's defense that May was a liar who had made up the allegations against him out of anger. The extraneous offense evidence showed that what Nguyen had been accused of doing to May was not out of character for him. Accordingly, the evidence had a high probative value. *See Castaneda*, 2023 WL 3743316, at *7.

Nguyen concedes that the evidence did not take an undue amount of time to elicit, and we agree. Further, the evidence was not cumulative of other evidence. These factors weigh against excluding the evidence and in favor of admission.

Minh's testimony was straightforward and easy to understand, as was Goldring's testimony, and the evidence was relevant to the question of whether Nguyen had committed the charged offense, which was the only issue in the case. For those reasons, and because the evidence did not take an undue amount of time, the evidence was unlikely to confuse the jury or distract from the main issue. Additionally,

17

because the evidence "concerned matters easily comprehensible by laypeople," *Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd), it was unlikely to be given undue weight. These factors weigh against exclusion.

Regarding whether the evidence tended to suggest a decision on an improper basis, we recognize that "[e]vidence of a sexual nature involving children . . . is inherently inflammatory and prejudicial." *Roe v. State*, 660 S.W.3d 775, 785 (Tex. App.—Eastland 2023, pet. ref'd). However, although Nga was younger than May when her grandmother caught Nguyen in her house, the evidence of what happened with Nga was "no more inflammatory than the charged offense and was presented through fewer details than the charged offense." *Bittick v. State*, No. 05-22-00882-CR, 2024 WL 655673, at *9 (Tex. App.—Dallas Feb. 16, 2024, no pet. h.) (mem. op. not designated for publication). Further, when the trial court admitted the evidence, it stated that it would include a limiting instruction in the jury charge, and it did so. We presume the jury obeyed the trial court's instruction. *See Roe*, 660 S.W.3d at 785.

In summary, the evidence was prejudicial, but on balance, it was not more prejudicial than probative. Consequently, the trial court did not abuse its discretion by overruling Nguyen's Rule 403 objection. We overrule the remainder of Nguyen's issue.

## Conclusion

Having overruled Nguyen's sole issue, we affirm the trial court's judgment.

18

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  April 4, 2024